# Henry *v.* Wanamaker, Appellant.

*Negligence—Fences—Defective fence—Question for jury.*

1. The owner of the ground upon which a fence is maintained along a highway, or, if some other person is solely responsible for the maintenance of the fence, then that other person is not an insurer, but so far as the exercise of ordinary care will enable him to do so, he is bound to keep the fence in such condition that it will not fall and injure persons passing along the highway.

2. If it is shown that the fence was very dilapidated, that its posts were rotten, and that it was rotten from the bottom, and that during

a high wind it fell and injured a person passing by, the question of the negligence of the person responsible for the maintenance of the fence is for the jury.

*Negligence—Fence—Lease of fence for advertising purposes—Contract—Evidence—Independent contractor.*

3. In an action to recover damages for personal injuries caused by the fall of a fence, the defendant, the owner of the fence, cannot offer in evidence a written agreement between himself and an independent contractor whose negligence is alleged to have caused the accident, where it appears that the contract was executed three months after the accident, and there was no preliminary proof that what was embodied in the writing was the oral contract that existed between the parties at the time of the injury.

4. Nor will the owner be permitted to offer in evidence an agreement between himself and a bill posting company by which he had leased the use of the fence for the display of advertisements, and by which the lessee agreed to keep the fence in good condition.

5. While the parties, as between themselves, may determine which shall keep the fence in good condition, the owner cannot by such an agreement or lease relieve himself from responsibility to the public.

Argued Oct. 20, 1910. Appeal, No. 133, Oct. T., 1910, by defendant, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1900, No. 257, on verdict for plaintiff in case of Richard S. Henry, Jr., by his next friend and father, Richard S. Henry, v. John Wanamaker. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before WILTBANK, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,000. Defendant appealed.

*Errors assigned* were (1) refusal to admit in evidence the contract between the defendant and Owen Grinnan; (2) refusal to admit in evidence the paper termed a "lease" between defendant and the American Bill Posting Company; (5) refusal of binding instructions for defendant, and (6) refusal to enter judgment for defendant non obstante veredicto.

*W. W. Smithers*, for appellant.—The owner of walls or buildings is not liable unless negligence is proved: Cases reviewed in note, 34 L. R. A. 557; Joyce v. Black, 226 Pa. 408.

Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing not only to be the best, but their only, evidence of their agreement: Martin v. Berens, 67 Pa. 459; Union Storage Co. v. Speck, 194 Pa. 126; Wodock v. Robinson, 148 Pa. 503.

Grinnan, under the paper, was an independent contractor in charge of the premises: Seitzinger v. Burnham, 223 Pa. 537; Beckman v. Ry. Co., 219 Pa. 26; Hunt v. R. R. Co., 51 Pa. 475; Harrison v. Collins, 86 Pa. 153; Edmundson v. R. R. Co., 111 Pa. 316; Eby v. Lebanon County, 166 Pa. 632.

The bill posting lease should have been admitted and binding instructions for the defendant, based thereon, given: Pickering v. O'Brien, 23 Pa. Superior Ct. 125; Funk v. Haldeman, 53 Pa. 229; Baldwin v. Taylor, 166 Pa. 507; Watson v. O'Hern, 6 Watts, 362; Steel v. Frick, 56 Pa. 172.

The bill posting company being in possession under a lease defendant was not liable: Bennet v. Bittle, 4 Rawle, 339; Bears v. Ambler, 9 Pa. 193; Lindstrom v. Penna. Co., 212 Pa. 391; Lonzer v. R. R. Co., 196 Pa. 610.

*Henry M. Stevenson*, with him *Maxwell Stevenson*, for appellee.—The owner of real estate lying along a public street or highway, is bound to keep it in such condition as to be safe to persons passing over the road, and is liable in damages for an injury resulting from a failure to perform this duty: Grier v. Sampson, 27 Pa. 183; Chester v. Bank, 9 Pa. Superior Ct. 517; Lindstrom v. Penna. Co., 212 Pa. 391; Brookville Boro. v. Arthurs, 152 Pa. 334.

The court will construe agreements, which on their face appear to be leases, to be other than leases, when third parties are concerned: Woodward v. Leiby, 36 Pa. 437;

Fisher v. Rush, 71 Pa. 40; Barclay v. Wainwright, 86 Pa. 191.

OPINION BY RICE, P. J., March 3, 1911:

Defendant owned a lot of ground at the corner of Washington avenue and Broad street in the city of Philadelphia, having a frontage of 150 feet on Washington avenue, along which was a board fence about twelve feet high, the boards being nailed on stringers and running up and down. In August, 1900, the plaintiff, then about nine years old, came down Broad street, on the sidewalk, and just as he turned the corner on to Washington avenue a high wind blew about thirty feet of the fence over on him, breaking his leg. At the time of the accident the lot was being excavated for the purpose of erecting buildings thereon. The excavation was from eighteen inches to two feet in depth and extended to about a foot from the fence line.

1. The allegation of the statement of claim is that the "fence was negligently, carelessly and insufficiently supported and braced," and it is argued that proof that it was blown down by the wind would not, of itself, sustain the allegation, either prima facie or conclusively. We need not discuss this question, for there was other evidence tending to sustain the allegation. A witness who had opportunity and occasion to observe the condition of the fence before and after the accident testified: "It was a very rotten kind of fence. It had been up there for years. It was very dilapidated. . . . All the posts in the bottom, where the posts went in the ground, were rotten from the dirt, as posts get." He testified that he saw the conditions in the afternoon after the accident, and, being asked whether from what he saw he could tell what caused the fence to fall, he said: "I could see that the fence did not take much trouble for it to fall, because it was rotten from the bottom. The posts all showed that. . . . The boards were rotten too." In connection with this, the testimony as to the excavation must be borne in mind. The owner of the ground upon which such a structure is maintained,

or, if some other person is solely responsible for its maintenance, then that other person, is not an insurer, but, so far as the exercise of ordinary care will enable him to do so, he is bound to keep it in such condition that it will not fall and injure persons passing along the highway. The principle was thus stated in Grogan v. Penna. R. R. Co., 213 Pa. 340: "On the principle, however, that no one can use or maintain his property in such a dangerous or unsafe condition as to endanger the life, limb or property of others, the defendant was under the duty of maintaining its fence strong and safe enough to resist such forces or conditions as should have been foreseen by ordinary forecast." The evidence above alluded to was sufficient, if believed, to sustain a finding that such care had not been exercised, and that the omission to exercise it was the proximate cause of the injury. Therefore, the question was for the jury and it was proper to submit the case to them, unless, under the evidence, the owner of the ground was not responsible for the maintenance of the structure. This is the remaining question to be considered.

2. The gravamen of the plaintiff's complaint is not that there was negligence in excavating too near the fence, but that, in view of all the conditions, including the proximity of the excavation, the fence was negligently, carelessly, and insufficiently supported and braced. This being so, it is not apparent that proof that the excavating was being done by an independent contractor would relieve the owner from responsibility. See Homan v. Stanley, 66 Pa. 464. But apart from this consideration, the court was right in rejecting the offer of the written contract between the defendant and Grinnan. As this contract was not executed until three months after the accident, it was incumbent on the defendant to show preliminarily that it was the mere embodiment in writing of the oral contract that existed between the parties at the time of the injury; in other words, that it embraced all the terms, and no others, of the oral contract. The testimony upon this subject, when viewed as a whole, did not meet this plain

requirement, and for that reason, if for no other, the court was right in rejecting the offer. This ruling did not preclude proof of the oral contract, but simply excluded the writing as evidence of its terms. Under the evidence admitted, the rule as to nonresponsibility for the acts of an independent contractor did not apply to the case.

3. For the purpose of showing that he was not in possession and control of the fence at the time it fell, the defendant offered in evidence an agreement, under seal, between him and the American Bill Posting Company, dated November 1, 1897, whereby the defendant "let unto said lessee the following fences for advertising purposes described as follows subject to the terms and conditions hereinafter stated." Here follows a description of several fences, and amongst them the following: "Northeast corner Broad and Washington avenue, containing sixty-six feet on east side of Broad street, and one hundred and fifty feet on north side of Washington avenue." In a subsequent part of the instrument it is stated that "this lease is based upon the fact that sixteen hundred lineal feet is leased as advertising space." This throws some light upon the nature and effect of the agreement as understood by the parties. The term mentioned in the instrument was one year, and the annual rental was $400, payable quarterly in advance. Amongst the terms and conditions were these: that the so-called lessee should, at its own expense, keep the fences in good condition and at the expiration of the agreement deliver up the same in good order and repair, ordinary wear and tear excepted; that in the event of any one being injured by the fences or billboards placed thereon, the lessee, and not this defendant, should be responsible for such injury; that the lessee would remove the billboards or fences upon thirty days' notice, and cease posting bills upon one week's notice without expense to the lessor, which notice could be served at any time; that should any of the conditions be not fully complied with by the lessee the lessor, upon ten days' written notice, could cancel the agreement and prohibit

the further use of the fences and boards by the lessee, without liability for any claim of any kind whatever on the part of the lessee; and that thereupon any attorney of any court in the county could appear for the lessee in an action of ejectment to be brought against him by the lessor, and confess judgment.

It cannot be disputed that the instrument contains many of the qualities of a lease. The contention that it gave the American Bill Posting Company other and higher rights than those of a mere licensee has support in the cases of Pickering v. O'Brien, 23 Pa. Superior Ct. 125; Oakford v. Nixon, 177 Pa. 76; and Oakford v. Nirdlinger, 196 Pa. 162. But if a lease, it was a lease of a peculiar kind, not differing, in essential particulars, from the lease of the roof and side wall of a building for the purpose of displaying advertisements thereon, such as was under consideration in the two cases last cited. It differs materially, however, from the lease under consideration in Pickering v. O'Brien, 23 Pa. Superior Ct. 125; for the structure was not a mere billboard, but was also a fence, and at the time of the accident was being maintained, presumably, for the benefit and protection of the defendant's property, of which he was in the occupancy, as well as for the use and benefit of the bill posting company. It was competent for the parties to agree that as between themselves the duty of keeping the fence in repair, as well as the responsibility for injury to third persons, resulting from omission to perform that duty, should devolve upon the bill posting company. But, as was said in Bears v. Ambler, 9 Pa. 193, so far as the public is concerned, it is nothing to them who may be ultimately liable for the repairs. Therefore, as between the defendant and third persons, this express agreement could not absolve him from the obligation that otherwise would have rested on him by reason of the maintenance of the structure for his purposes. Was there such obligation? The general rule is that where premises are in good repair at the time they are let, and the landlord is

not bound by the lease to keep them in repair, the tenant in possession, and not the landlord, is liable for an injury resulting from failure to repair the pavement or fence in front of the premises: Lindstrom v. Penna. Company for Ins. on Lives, etc., 212 Pa. 391. But this rule is not without exceptions. "The tenant always is; the landlord may, under peculiar circumstances, be liable for an injury sustained by a third person arising from negligence:" Bears v. Ambler, supra. Surely the owner of a building could not relieve himself from the duty, so far as the exercise of ordinary care would enable him to do so, to keep its walls in such condition that they will not fall and injure persons passing along the highway, by leasing them for the purpose of displaying advertisements on their surface. To extend the general rule above stated to such a case is not required by any authoritative precedent of which we are aware, and is not warranted by sound principle. If there is a difference between the case we have supposed and the one at bar, it is not such as to lead to a different result; it certainly is not such as to make the same rule applicable to the case, that might have been applicable if the defendant had leased the entire premises inclosed by the fence to the American Bill Posting Company. We conclude that the court committed no error in rejecting the offer of the lease.

All of the assignments of error are overruled and the judgment is affirmed.