## S. C. Leake et al. *v.* City of Philadelphia, Appellant.

*Equity—Injunction—Road law—Repaving of streets.*

A bill in equity will lie in favor of an owner of property on a street to restrain the municipality from entering up liens for paving against the property, where the paving is not an original one.

*Road law—Streets—Paving—Repairs—Macadamizing.*

Although macadamizing is prima facie not a paving for a city street, yet it may be a paving if put down by the city in the first instance, or adopted subsequently as a pavement for the purpose of turning a road into a street.

Where a city street was macadamized and assimilated with the rest of the city streets, and so recognized and treated by the municipality for many years before an asphalt pavement was laid, the latter is a repaving for which the abutting owners are not liable.

Argued April 11, 1895. Appeal, No. 197, Jan. T., 1895, by defendant, from decree of C. P. No. 4, Phila. Co., March T., 1893, No. 831, on bill in equity. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Bill in equity by 125 owners of property on Frankford avenue to restrain the city of Philadelphia from filing municipal claims against plaintiffs for the paving of said street, from issuing writs of scire facias thereon, and to prevent the collection of the cost of paving from the property owners along the line of the street.

The case was referred to Henry D. Paxson, Esq., as master.

The master reported the facts as follows:

What has long been known as the "Frankford road" is one of the oldest highways in the commonwealth, having existed prior to 1686, when by the Provincial Council it was duly ordered laid out of the width of sixty feet. The action of the surveyors appointed by this order, as well as the road by them laid out, was formally confirmed by the council. October 29, 1696. The physical lines of the road as then adopted have not since been altered. By later order, of August 15, 1700, it was ordered that the road should be properly opened, cleared and put in better condition.

This road, now Frankford avenue, has been variously known

as the "Queen's Highway," "King's Highway," and the old "Post Road," having been the mail route to New York. It continued as a dirt road until 1804.

The town of Frankford, of which Frankford road was the main avenue, was incorporated as a borough by act of March 7, 1800 (P. L. 572). By section 5 of this act the borough was given power to make ordinances, rules and regulations for the improvement of its streets, lanes, alleys, etc.

By borough ordinance of March 18, 1801, Frankford road was styled as "Main street," and the owners of properties abutting thereon were required to pave and curb their footways and to construct gutters with stone. Until the consolidation act of 1854 various ordinances were from time to time passed by the borough under its police power regulating the footways, curbs and gutters in said street. The sidewalks and gutters have been paved, curbed, guttered and maintained from the incorporation of the borough to the present day.

On March 24, 1803, an act of assembly (P. L. 418) was passed authorizing the construction of a turnpike or macadam road upon Frankford road through Frankford and Bristol to the ferry at Morrisville on the river Delaware.

Section 9 of said act provides that the road shall be laid out sixty feet wide, and at least twenty-six feet thereof be made an artificial road "bedded with wood, stone, gravel or any other hard substance well compacted together and of sufficient depth to secure solid foundation, and that the said road shall be faced with gravel or stone pounded, or other small hard substance, in such a manner as to form a firm and as near as the materials will admit of, an even surface and so nearly level in its progress as that it shall in no place rise or fall more than shall form an angle of four degrees with a horizontal line."

Shortly after the passage of this act the turnpike was constructed and the company began to operate, and while the act provided that the street should be macadamized at least twenty-six feet in width, yet, as early as 1844, from the testimony of a number of witnesses, the master finds as a fact that the whole street was macadamized from gutter to gutter. Its width was sixty feet from house line to house line, the sidewalks being each seven feet exclusive of stone curbs separating them from paved gutters composed of brick and cobblestones of thirty

inches each in width.   For a width of eighteen feet in the cen-
ter of the main macadam road there was later placed a pave-
ment of cobblestones by the railroad company where their tracks
were laid.

The street was lighted with oil lamps, and was cleaned and
regulated in police matters by the borough.

' From the time the road was first laid out by the Provincial
council until the present day Frankford road has continued to
be the main thoroughfare leading from the city northeasterly.
One reason for such use is found in the fact that it was the
only street which was bridged at the crossing of Frankford
creek.   And, as laid out in 1845, the testimony is that without
making a detour of from a mile to a mile and a half, it was
impossible to reach Frankford without passing over this main
thoroughfare.   It was a busy highway as early as one hundred
years ago.   Upon it was carried the United States mail, and
coaches ran over the line twice a week.   As late as 1845 the
testimony is that the only other street in Frankford laid out
nearly the length of the borough was Paul street.   This street
was not sufficiently paved to induce travel and was only occa-
sionally used, nearly all the travel being on Main street.

By the consolidation act of February 2, 1854, Frankford
avenue passed under the control of the city of Philadelphia.
In 1857 water mains were laid, and about that time gas was
also introduced into the street, which was then being lighted
at the city's expense.

Then, too, in order to tear up any portion of Frankford
avenue to connect with the gas or water mains a property
owner was obliged to obtain from the city a permit under the
ordinance relating to the subject, as in any city street.

There were, by the custodian of the city plans at the sur-
vey department, produced before your master numerous plans,
prepared under the authority of both the borough, and, since
the consolidation, the city, showing the established lines and
grades of Frankford avenue.   All of the plans prepared prior
to 1877 establish the street with a width of sixty feet—forty-
six feet between the curbs and seven feet sidewalks on each
side.   The lines and grades are substantially the same as are
physically shown upon the street to-day.   The two plans pre-
pared since 1877 establish the width of the street to be seventy

feet, the sidewalks being equally widened on each side five feet. The street still remains forty-six feet in width between its curbs. The actual widening of the sidewalks in conformity with the last named plans has never been made, and the street, as to its lines, remains practically the same as it existed one hundred years ago.

The Philadelphia & Delaware River Railroad Company was incorporated April 4, 1854 (P. L. 759). Under the act it was authorized to construct a railroad beginning at a point north of Cherry street, Kensington, in the county of Philadelphia, and thence through the eastern part of Montgomery county, by way of the Pennypack creek, to or near the village of Hatborough, and thence by way of New Hope or Riegersville, or any point between said New Hope or Riegersville, to the borough of Easton, in Northampton county.

On December 12, 1857, the Philadelphia & Delaware River Railroad Company entered into a contract with the turnpike company to keep Frankford avenue in repair from curb to curb.

The said railway company constructed its roadbed for the running of horse cars and began to run its cars in the year 1858 along Frankford road. This company tore up eighteen feet in the center of the macadamized street and laid double tracks, and replaced the portion torn up with cobblestones and kept the street in repair from time to time, from curb to curb, in accordance with its contract with the turnpike company.

The Second and Third street railway company also began to use the street in the year 1868, since which time it has been occupied by two lines of street cars.

The evidence also shows that the street was maintained in good repair, as well the macadamized as the eighteen feet cobble portion of it, by the Frankford & Southwark Philadelphia City Passenger Railroad Company from the time of its operation until January 1, 1889, when the turnpike company was condemned by the city upon the payment to it of $75,000, and in pursuance of ordinance of December 5, 1888, freed from tolls. After this time the street was repaired and cleaned by the city.

The plaintiffs, whose names are set forth in the caption at the beginning of this report, are taxpayers and owners of properties upon Frankford avenue, the locations of which will appear in the testimony attached hereto.

Upon March 11, 1891, Ordinances '57, an ordinance was approved authorizing the paving of Frankford avenue from Margaret street to Adams street with asphalt, the cost thereof, excepting $12,725 for intersections, to be paid by the owners of property abutting on said Frankford avenue. Upon March 26, 1891, the Vulcanite Paving Company was awarded the contract to do said paving.

After the awarding of said contract the property owners along the line of said street filed October 1, 1891, a bill in equity, of March T., 1891, No. 783, to enjoin the city of Philadelphia and the contractor from doing said work and charging the cost thereof against their properties. Your honorable court of common pleas, No. 4, refused to grant the injunction prayed for. The property owners appealed to the Supreme Court and the decree of your honors upon preliminary injunction was affirmed.

An ordinance was approved October 1, 1892, appropriating the sum of $12,725 for the cost of paving intersections, and a further sum of $70,000 for the purpose of carrying into effect the contract with the Vulcanite Paving Company. In pursuance of this ordinance the Vulcanite Paving Company paved the street between the points in question with sheet asphalt, and the city of Philadelphia paid the contractor for said work.

That Frankford avenue was well and substantially macadamized from curb to curb, except where it was paved with cobblestones eighteen feet in width thereof, as hereinbefore indicated, that is to say, that the character of the highway was such that it was constructed, first by placing upon the natural dirt road large broken stones for a foundation, and upon them in turn were placed smaller stones for a top dressing, in size such as would pass through a three inch mesh. This material was then ground down by teams until it presented a smooth, compact surface. The artificial roadway was in the center from twelve to fifteen inches in depth, which gradually decreased until at the gutters its measure was from six to eight inches, so that the street then became a firm and substantial highway for all practical purposes. It was so kept in repair. When torn up for the purpose of laying the asphalt its foundation stones were still there, remaining in good condition, and the foundation of the asphalt pavement was made by using these old stones and by breaking up the intersection stones and gutter

cobblestones, which were nearly if not quite sufficient for such new base work.

The general external character of the street, its use, municipal care and improvements, the commerce upon it, were such as would characterize urban property. There was already indicated that all the practical advantages had to the adjoining properties accrued, which are present when the character of rural property has been changed and becomes part of a city.

The master, citing Frankford & Southwark Phila. City Pass. Ry. v. Philadelphia, 17 W. N. C. 245; City of Philadelphia v. Ridge Avenue Pass. Ry., 143 Pa. 444; City of Philadelphia v. Evans, 139 Pa. 483; Boyer v. Reading City, 151 Pa. 185; Harrisburg v. Segelbaum, 151 Pa. 172, reported in favor of the injunction prayed for.

The court overruled exceptions to the master's report, and entered a decree enjoining the city from filing municipal claims.

*Errors assigned* were in dismissing exceptions to master's report.

*Howard A. Davis* and *John G. Johnson, Charles F. Warwick* with them, for appellant.—The learned master in reaching his conclusions in the case at bar relies upon the decisions in the case of Harrisburg v. Segelbaum, 151 Pa. 172, and Boyer v. Reading City, 151 Pa. 185. These cases were also relied upon by the plaintiffs as ruling this case, but the master fails to note the distinction between these cases and the case at bar, and the case of Diebler, 147 Pa. 263. It should be noted that the case of Harrisburg v. Segelbaum was argued in June, 1891, while that of Diebler was not argued until January 13, 1892, and was decided by this court on January 25, 1892, and the case of Segelbaum was not decided until January 3, 1892. The case of Leake et al. v. Philadelphia was argued March 28, 1892, and decided by this court June 1, 1892, subsequent to both of the cases above referred to, and it cannot seriously be contended that the opinion in the above cases are inconsistent, in view of the particular facts in each case, nor that it was the intention of this court, in either the Segelbaum or Boyer cases, to overrule that well settled doctrine as laid down in the cases of Diebler v. City and Philadelphia v. Ehret, 153 Pa. 1, that the

property owner is liable for the paving of the street in front of his property, and that paving takes place only when the councils of the city authorize it to be done.

The right of the city to order the paving of its streets, to determine the kind of pavement, the manner of its doing, the terms of the contract, etc., is independent of the property owner's judgment or consent: Philadelphia v. Jewel, 135 Pa. 329 ; 2 Dillon on Municipal Corporations, 761.

*Robert Alexander*, of *Alexander & Magill*, for appellee.— This court has several times said that macadamizing is a paving : Harrisburg v. Segelbaum, 151 Pa. 172; Greensburg v. Laird, 138 Pa. 533; Phila. v. Ehret, 153 Pa. 1.

Councils cannot say the owner shall pay regardless of benefits conferred.   Nor can the legislature itself so say : Philadelphia v. Farmers' Market Co., 161 Pa. 522.

A property owner, in a case of this kind, may set up the liability of a railroad company: Philadelphia v. Spring Garden Farmers' Market Co., 161 Pa. 522; Penn. & Ohio Canal Co. v. Graham, 63 Pa. 290; Frankford & Southwark Phila. City Pass. Ry. v. Philadelphia, 17 W. N. C. 245.

PER CURIAM, October 7, 1895 :

Although macadamizing is prima facie not a paving for a city street, yet it may be a paving if put down by the city in the first instance or adopted subsequently as a pavement for the purpose of turning a road into a street.   This municipal act of adoption or recognition as a paved street is the test of the liability of an abutting property owner to pay for further repairs or repaving, as we have just held in Philadelphia v. Eddleman, 169 Pa. 452.

The special facts found by the master bring this case within the rule thus laid down.   He reports that Frankford avenue was paved, and assimilated with the rest of the city streets, and so recognized and treated by the municipality for many years before the asphalt pavement was laid, and that the latter was a repaving for which the abutting owners were not liable.   On these facts the learned court below was right in issuing the injunction.   Decree affirmed at the costs of the appellant.