Suit by Maurice M. Rafkin and wife and all others similarly interested against the City of Miami Beach, a municipality incorporated under the laws of the state of Florida, to test the validity of special assessments for street improvements. From a judgment dismissing the complaint, complainants appeal.
Judgment reversed with directions.
In March 1946, the City of Miami Beach adopted a resolution in which it ordered the paving of Indian Creek Drive forty feet wide, from 26th Street to 40th Street. The City Engineer filed the estimated cost of the improvement with the City Clerk, assessments against the abutting owners were imposed to pay for said improvement, a date was designated to hear objections to the assessments and other steps required by the City Charter to confirm the assessments were taken.
In June 1947, appellants representing a like class of owners filed their bill of complaint, alleging that the said improvements were of no benefit whatever to the abutting lands, that prior to said improvement Indian Creek Drive was paved twenty-five feet wide and gave the adjacent owners ample means of ingress and egress to their property, that the area adjacent to Indian Creek Drive was a quiet residential area where children were not endangered by motor vehicles traveling at excessive speed, they were not subjected to the dangers of heavy traffic, that the widening and repavement of Indian Creek Drive was done primarily for the purpose of relieving traffic *Page 837 
congestion on Collins Avenue and to provide an additional arterial highway to 41st Street Bridge, one of the main exits from the City to the North. It is further alleged that the widening of Indian Creek Drive has made it a noisy, heavily traversed thoroughfare for the use of the public generally and that it is now less valuable and desirable for homes, the purpose for which it was originally designated and zoned. It is also alleged that the property of appellants and all those in whose interest this suit was brought were assessed the full cost of said improvement based on front footage, that they received no notice of nor were they given opportunity at any time to appear and resist said assessments. A motion to dismiss the bill of complaint as amended was granted and this appeal was prosecuted.
The first question presented challenges the right of appellants to litigate a class suit by means of a bill in equity.
It is contended at the threshold that the bill of complaint was dismissed because a class suit would not suffice to test the validity of a special assessment. Appellee makes no point of this contention and we are not sure that the chancellor had it in mind when he dismissed the bill. We think it was a proper remedy here. City of Miami Beach v. Tenney, 150 Fla. 241, 7 So.2d 136. See also same case in 152 Fla. 126, 11 So.2d 188.
The second and primary question presented is whether or not the City of Miami Beach may legally impose the cost of paving Indian Creek Drive on the abutting property owners in the face of the allegation that no benefits to them accrued as a result of such improvements, and that the value of appellants' property was actually decreased and injured by them.
This Court has repeatedly approved the doctrine that special assessments must be supported by commensurate benefits. The special assessments complained of here were approximately ten dollars per front foot. The bill of complaint alleges a complete absence of benefits to the abutting property from these assessments in that prior to the improvement Indian Creek Drive was paved 25 feet wide and provided adequate means of ingress and egress to appellants' homes, that such benefits as accrued from the widening of Indian Creek Drive were to the people of Miami Beach and the public generally for relieving traffic on Collins Avenue, that appellants' property having been zoned and purchased for residential purposes is now less valuable and desirable for that purpose because Indian Creek Drive was converted into a boulevard or highway for heavy traffic.
If the appellants can prove these allegations, they should not be required to pay the special assessments complained of. There was a time before the day of the automobile and the creation by zoning ordinance of the suburban trade areas including residential and industrial centers, now so common throughout the country, that paving or widening streets invariably conferred additional benefits to the abutting property, but this may be far from true at the present. When an area is zoned for residential purposes and people buy and build and beautify with that idea in view, it is entirely possible that the value of their properties for residential purposes will be depreciated by having the streets widened and turned into thoroughfares or boulevards for public use, or to relieve traffic on other streets for the benefit of the public. When this is shown to be true, there certainly is no theory on which the abutting owners should be required to pay for the improvements. Stockman v. City of Trenton, 132 Fla. 406, 181 So. 383. City of Ft. Myers v. State,95 Fla. 704, 117 So. 97.
The quality that confers additional benefits to abutting property of a potentially commercial character by widening and paving streets is commercial advantage, added convenience or something that enlarges its potential as an income producer. The location of a filling station, peanut stand, grocery store, dry goods store or any retail venture increases in value with the number of people that are drawn to it over trunk line or converging lines of travel. It is a common practice to make traffic counts with a view to locating such enterprises and the price paid for sites on which to locate them depends on the numbers drawn to *Page 838 
them by force of travel conditions. Whoever heard of making a traffic count to locate a home. In fact, who values a home by the number of motor vehicles or pedestrians that pass the highway in front of it?
So the mere fact of widening a street pavement may or may not confer a benefit to the abutting owner. If the benefit is primarily one to be enjoyed by the public, certainly the public should bear the burden. The fact of widening a highway so one hundred cars a minute can pass today where one passed in the same time yesterday is by no means conclusive evidence of increased value to the abutting lands. People who settle in a restricted area for the purpose of building and maintaining a quiet home where the proprietors and their children and dogs may enjoy surcease from the noise and confusion of the "range," acquire a valuable right that they are entitled to have protected. If legal concepts cast when the law was young are not sufficient to afford the home owner that protection they should be recast in current phrase to provide it.
The concluding question presented is whether or not the notice to abutting owners was sufficient to apprise appellants of the special assessments against their lands so as to afford them an opportunity to appear and resist them.
If, as heretofore indicated, appellants can prove the allegations of their bill of complaint it necessarily follows that the special assessments were made without legal authority, and being so, this question becomes unimportant. If however, the allegations of the bill of complaint are not sustained, then it becomes important that this point be adjudicated.
Sections 29 and 30 of the City Charter, being Chapter 7672, Sp.Acts of 1917, as amended by Chapter 22401, Sp. Acts of 1943, details the procedure, for laying a valid special assessment for local improvements. As to notice, it requires that when the plans, specifications and estimates are filed with the City Clerk, he shall post a notice at the door of the City Hall and at least two other public places in the City or publish it in some newspaper of general circulation in the City. The notice shall state in brief terms a description of the improvements, their location, including the plans, specifications, estimates, cost and the time objections of those interested may be heard.
The Courts have generally held that this notice is sufficient if it gives the landowner knowledge of and affords him an opportunity to be heard to resist the assessments at some time before they become final. Chicago, Milwaukee, St. Paul Pacific Railroad Co. v. Risty, 276 U.S. 567, 48 S.Ct. 396, 72 L.Ed. 703; Londoner v. City County of Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103; City of New Smyrna v. Certain Lands, 128 Fla. 543,176 So. 57; City of Fort Myers v. State, 95 Fla. 704, 117 So. 97. The notice in question did not meet the requirement contemplated by the law, it does not put the owner on notice of a special assessment to widen Indian Creek Drive, and it is so intermingled with other printed matter that one of ordinary mind would not be put on notice that his rights were in danger.
For the reasons so stated the judgment appealed from is reversed with directions to reinstate the cause and proceed accordingly.
Reversed.
ADAMS, C.J., and SEBRING and HOBSON, JJ., concur.
CHAPMAN, THOMAS, and BARNS, JJ., dissent.