## Vendetti Appeal.

Argued April 13, 1956.  Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ.

*William W. Knox,* for appellants.

*Herbert J. Johnson, Jr.,* with him *James W. Evans,* for appellee.

Opinion by Ervin, J., July 17, 1956:

This is an action of scire facias sur municipal lien brought by the Township of Millcreek, Erie County, Pennsylvania, to collect an assessment for construction of a sewer in Montpelier Avenue in said township upon which street the property of the defendants abuts. The sewer was completed on July 19, 1951 and the assessment therefor was made on September 4, 1951. Defendants filed an affidavit of defense and after various pleadings an issue was formed. Trial of the case before a jury resulted in a verdict for the defendants. The plaintiff thereupon filed motions for judgment n.o.v. and new trial. The court in banc, concluding there was insufficient evidence to warrant the submission of the question of dedication to the jury, set aside the verdict and entered an order granting plaintiff's motion for judgment n.o.v. and directed that judgment be entered for the plaintiff in the amount of $1440.63 with interest and record costs. This appeal followed.

The facts are stated in the opinion, by Evans, P. J. of the court below, as follows: "J. A. Root on June 11, 1924, recorded a plot of Hartt Estate Division in Erie

County Map Book 2, pages 487 and 488 affecting several acres of property owned by him in Millcreek Township, Erie County, Pennsylvania. Said plot showed streets with designated names, one of which was Montpelier Avenue. Lots were designated by number and so sold at various times to various persons. There was at this time no township facility in the area for sewage and drainage disposal, and as an inducement to prospective purchasers, Root installed in Montpelier Avenue a tile sewer ten inches in diameter extending from the top of the bank of Lake Erie southwardly for approximately 2000 feet to the West Lake Road and for several hundred feet southwardly of said West Lake Road. This privately constructed sewer served the homes erected on lots abutting Montpelier Avenue for sewage disposal purposes as well as to drain water from damp and swampy areas in the subdivision. The sewer terminated at a septic tank constructed by Root at the top of the bank of Lake Erie. After the sale of some of the lots J. A. Root went bankrupt, and the septic tank fell into disrepair with no one assuming the responsibility of restoring it so as to function as originally intended. The effluent ran untreated over the bank bordering Lake Erie into an area where several summer cottages were located.

"These cottage residents, in 1937, complained of the unsanitary and unhealthful condition to the State Health Department and the township supervisors. The supervisors were at that time with the aid of W.P.A. funds constructing sanitary sewers throughout the township, which borders on the City of Erie. They had completed an interceptor sewer along the bank of Lake Erie at right angles with Montpelier Avenue and terminating at a manhole near the terminal of the Root sewer and the defective septic tank. To alleviate the

situation the supervisors, during the summer months for a period of about 12 or 14 years, blocked off the outlet of the Root sewer near the manhole and defective septic tank and directed the flow of sewage and drainage water into the township system.

"In the winter months when the cottage residents were not occupying their property, the sand bag used for the purpose of directing the sewage and water flow was removed so that the effluent followed its previous course over the bank of Lake Erie and into the lake itself. There was testimony to show that the township did this to save the cost of help and equipment use during these winter months. A charge for the summer sewage disposal services was made to the residents on Montpelier Avenue on formula identical with that used for similar service throughout the township. The charge was based on the cost of the service including overall supervision, maintenance, keeping of records, and collection charges. No repairs were made to the old Root sewer by the township but an undisclosed portion thereof south of the West Lake Road was incorporated into the 1950-51 sanitary system."

Pertinent facts also disclosed by the record show that J. A. Root's interest in the unsold lots and the streets was sold to Paul B. Root and William R. Smith by deed recorded January 30, 1939. On March 11, 1942 an agreement was entered into between the supervisors of Millcreek Township, parties of the first part, and Paul B. Root and William R. Smith, parties of the second part, whereby the township agreed to accept sanitary sewage from properties abutting on Montpelier Avenue providing certain repairs were made to the sanitary sewer in Montpelier Avenue, the cost of such repairs to be borne by Root and Smith. This agreement contained the following stipulation: ". . .

when new sanitary sewers are required in Hartt Estates Subdivision to replace existing sewers, in the discretion of the Supervisors, their successors or assigns, said new sewers shall be regarded as original construction and may be made the subject of assessment." On February 22, 1947 Root and Smith sold to the defendants the lots on Montpelier Avenue against which a lien was filed for the proportionate cost of an eight inch sanitary sewer constructed by the township in the years 1950-1951. On November 1, 1948 the township, by formal resolution, accepted Montpelier Avenue from West Lake Road north to South Shore Drive into the township road system.

The general principle of law is that when a work of local public utility, such as a highway, a water main or a sewer has once been constructed, either by the public or at the expense of abutting owners, the latter cannot be charged with the cost of any subsequent reconstruction or change, even if this is a further benefit. *Philadelphia v. Meighan,* 27 Pa. Superior Ct. 160. However, the test of the liability of an abutting property owner to pay for further repairs to an existing local public utility or for the reconstruction or replacement thereof is municipal recognition or adoption of the original construction. *Philadelphia v. Eddleman,* 169 Pa. 452, 32 A. 639; *Leake v. Philadelphia,* 171 Pa. 125, 32 A. 1110. "The controlling consideration, however, is affirmative municipal intention. This intention may be shown by an original ordinance directing the construction or by acquiescence or adoption. It can never be assumed. It must be proven. The sufficiency of the evidence showing intention is always for the court, but where the evidence is sufficient to warrant a finding of intention, it is for the jury, generally, to find it as a fact: . . . ." *Pottsville v. Jones,* 63 Pa. Superior Ct. 180, 186.

The issue in this case may be phrased as follows: Was there sufficient evidence from which a jury could find there had been a dedication of the original privately constructed sewer to the township and an acceptance thereof by the township authorities?

The burden of proof of facts sufficient to effect a discharge of the lien was upon the defendants. "The plaintiff, then having offered the lien, established a prima facie case, and it was the burden of the defendant to prove the existence of any facts which would successfully meet the plaintiff's demand." *Huntingdon Boro. v. Dorris,* 78 Pa. Superior Ct. 469, 473.

Dedication has a partial analogy to a contract and requires a consideration of the elements of offer and acceptance. The offer of dedication may be made in a number of ways. It may be made by the express declaration of the party or by acts, deed, or plat. 16 Am. Jur. Dedication, §§4, 19.[1] Dedication rests upon the intention of the owners, and the circumstances must indicate an abandonment of the property to the community. *Peterson v. Marianna Borough,* 310 Pa. 524, 165 A. 838; *Versailles Twp. Authority v. McKeesport,* 171 Pa. Superior Ct. 377, 90 A. 2d 581; *Sedwick v. Blaney,* 177 Pa. Superior Ct. 423, 110 A. 2d 902. No particular formality is requisite to constitute a dedication upon the part of the owner. Any act which clearly indicates an intention to dedicate is sufficient. *Waters v. Philadelphia,* 208 Pa. 189, 57 A. 523. In the instant case there is no evidence of any formal express offer of dedication by the developer of this subdivision or those who subsequently succeeded to his interests. Does the evidence warrant a finding of an implied offer to dedicate this privately constructed sewer system to the

[1] See also the excellent note in 53 Dickinson L. Rev. 35—Dedication in Pennsylvania.

township? We think not. The plot of the subdivision shows no sewer located therein and the subdivision map contains no dedicatory statement relating to sewers. Moreover, the conveyance in 1939 from Erie Trust Company, Receiver, to Paul B. Root and William R. Smith includes a conveyance of sewers which would preclude any claim the sewers had been dedicated to public use prior thereto. Furthermore, the agreement dated March 11, 1942 between the township supervisors and Paul B. Root and William R. Smith whereby the supervisors agreed to accept a certain portion of sanitary sewage from the Montpelier Avenue sewer expressly provided that repairs to the old sewer were to be made by Root and Smith and provided that the acceptance of such sanitary sewage from the old sewer into the township sewer system would not constitute an acceptance of the old sewer system by the township. Both the deed and the agreement clearly indicate retention of ownership and control of the old sewer system by Root and Smith and provide no basis for establishing that an offer of dedication to the township had been made. Assuming arguendo that a continuing offer of dedication could be inferred the agreement of March 11, 1942 clearly shows an express rejection of the offer by the township authorities.

Defendants contend the old sewer had been adopted by the township and assert such adoption is shown by (1) operation of the sewer by the township; (2) collection of sewer rents; (3) use of part of the old sewer to conduct sewage from other parts of the township; and (4) taking over Montpelier Avenue as a public road. Before considering the evidence relating to the alleged adoption of the old sewer by the township it may be well to consider the applicable legal principles. The acceptance of a dedication, or what may be more

accurately called an offer of dedication, has many of the incidents of acceptance in the law of contracts. It is the act of acceptance which makes the dedication complete. 16 Am. Jur., Dedication, §30. As stated by Mr. Justice JONES in *Dormont Borough Appeal*, 371 Pa. 84, 89 A. 2d 351: "Dedication is the joint effect of the offer of the owner to dedicate land and acceptance of such land by the public. Two parties are necessary, the owner on one side and the public on the other; there can be no dedication without the participation of both; Los Angeles v. Kysor, 125 Cal. 463." Evidence to establish an acceptance of a dedication must be clear and convincing. *Kniss v. Borough of Duquesne*, 255 Pa. 417, 100 A. 132; *Milford Borough v. Burnett*, 288 Pa. 434, 136 A. 669.

The defendants' contention that the old sewer was operated by the township is without merit. The only basis for this claim is found in the admitted fact that the township accepted sewage from the old sewer on Montpelier Avenue into an interceptor sewer constructed by the township. The old sewer had its own septic tank and means for disposing of the effluent down a ravine into Lake Erie. The septic tank became out of repair and slid down a hill with the result that raw sewage flowed into Lake Erie. The township constructed a manhole at the intersection of Montpelier Avenue and South Shore Drive and by blocking the outlet of the old sewer running northwardly from the manhole to the septic tank and opening the connection to the interceptor, sewage was diverted so that raw sewage did not flow onto the beach and into Lake Erie but was taken into the Erie sewage disposal system. This connection was maintained during the period from about June 1 to October 1 of each year and then the connection into the Erie sewage system was blocked

and during the winter months the sewage from Montpelier Avenue flowed again through the outlet in the manhole leading to the septic tank and on down over the bank into Lake Erie. This operation was not initiated or prompted by any desire or intention on the part of the township to take over the old sewer system but due to the insistence of the State Department of Health that this condition on the beach be alleviated, a condition that was annoying and repugnant to the residents who occupied summer cottages along the beach front.

Normal incidents of operation of the old sewer by the township would also include the making of repairs and alterations, regular maintenance work, and reconstruction and replacement of pipes and joints where necessary. There is no evidence of any repairs and maintenance or reconstruction work by the township. The testimony of the township secretary conclusively established that the township had never paid any bills for repairs or maintenance of the old sewer. Also, though permits are required for connection to the township sewer system no permits were ever issued nor fee charged for connections to the old sewer system by the residents along Montpelier Avenue.

As to the collection of sewer rents by the township these charges were calculated at one-half the yearly rates for it was only during one-half the year that the sewage from the old sewer was accepted into the township interceptor and disposed of through the Erie sewage disposal system. This charge cannot be considered evidence of an intention to accept or adopt the old sewer system, especially when considered in the light of the agreement of March 11, 1942 which specifically repudiated any inference that by acceptance of sewage from the old sewer into the township system the township thereby accepted the sewer system itself.

Nor does the use of a part of the old sewer system to conduct sewage from other parts of the township establish an adoption by the township of the remaining part of the system not so accepted or used. The new sewer as built in Montpelier Avenue, which is the subject of this assessment, extended northwardly only from a point 157 feet north of the Lake Road. South of this point the old sewer was left in place and connected with the new sewer system. However, use of part of the old sewer does not imply adoption of the entire old sewer system. Somewhat analogous to this contention of the defendants is the claim made that by use of part of a highway or street by the public the entire length not so used or accepted becomes a public highway. And in considering that proposition Mr. Justice KEPHART in *Milford Borough v. Burnett,* supra, at p. 441, said: "The mere fact of the use of a part of the way longitudinally, and its acceptance by the municipality as a public street over the part so used, does not draw to it another part of the same highway or street not so used or accepted. A use, under the law, covers only so much of the street on and over which the use takes place; it cannot be made to embrace and include longitudinal extensions not so used and accepted (citing cases)." See also *Mynyk's Appeal,* 175 Pa. Superior Ct. 339, 104 A. 2d 173.

Defendants also interpret the taking over of Montpelier Avenue as a township street as evidence of adoption of the sewer system lying under the street. The resolution of the township authorities taking over Montpelier Avenue made no reference to the sewers and since the sewer system was not specifically mentioned it cannot be assumed it was the intention of the authorities to also take over the sewer system. Subsequent to taking over Montpelier Avenue there was

no evidence of any repairs or maintenance work on the sewer by the township and no other evidence of the exercise of any dominion or control over the old sewer system by the township authorities.

Pertinent and applicable here is the following excerpt from the opinion of JENKINS, J. of the court below, affirmed in a per curiam by the Supreme Court in *Philadelphia, to use v. Odd Fellows Ass'n.*, 168 Pa. 105, 107, 31 A. 917: "We consider that when the defendant in the present case was allowed to lay a private drain, a mere license was granted. When the time arrived for constructing sewers affecting the locality in which the defendant's property is situated, the city constructed the sewer for which the claim is filed. This sewer was the first owned by the city constructed in front of the defendant's property.

"Now until the present sewer was laid was there a sewer in front of the defendant's property, which was part of the general sewer system of the city? When it was laid, the direct benefit to the defendant's property accrued, and the city, under its power of taxation, had a right to assess a due proportion of the cost of the sewer against the defendant's property by reason of the said benefit: (citing cases)."

Judgment affirmed.