Altman v. City of Philadelphia

622

*Paul A. Wolkin*, for plaintiff.

*James L. Stern*, Deputy City Solicitor, for defendants.

*Robert B. Einhorn, G. Levering Arnhold, Edward N. Gottlieb* and *Edward Unterberger*, for intervening defendants.

FLOOD, J., October 30, 1956.—The complaint seeks to enjoin the city from paying out any funds pursuant

to the Ordinance of December 30, 1955, averring that a previous Ordinance of July 14, 1954, had directed that certain paving be paid for by assessment, that a contract had been made thereunder which provided that the contractor should be paid for certain portions thereof exclusively by assessment bills but that the Ordinance of December 30, 1955, provided, in effect, that the contractor should be paid by the city for all uncollected assessments provided he first release all assessment claims which he then held and that the city should refund to the abutting owners such amounts that they had paid on the assessments. Petitioner claims that the ordinance is invalid for several reasons.

The answer, while admitting most of the averments of the complaint, states the payment under the Ordinance of December 30, 1955, will be valid and sets up as new matter that Stenton Avenue, the street that was paved, had been part of the State highway system but had been transferred back to the city in 1953 because the Commonwealth was unable to place it upon its paving program within the foreseeable future, that there is now pending a bill to transfer it back to the State highway system and that many owners purchased their property in reliance of the fact that the cost would be borne by the State. Certain property owners have intervened. Defendant's new matter further alleges that the properties assessed for the costs of this pavement actually were not benefited by it.

The issue is the legality of the ordinance under the circumstances.

### Findings of Fact

1. The Ordinance of July 14, 1954, provided, inter alia, that Stenton Avenue from Phil-Ellena Street to Murdoch Road should be paved and that the contractor should collect the cost thereof, exclusive of street intersections and in front of exempt properties, from the abutting owners.

2. In pursuance of this ordinance a contract was made with General Asphalt Paving Company, in pursuance of which it paved this portion of Stenton Avenue.

3. The contract stated that assessment bills should be issued to the contractor and that he agreed to accept and assume all risk of failure to collect such assessment bills, whether such failure be due to the invalidity of said bills or to any other cause.

4. The Ordinance of December 30, 1955, provided that the city should pay the contractor the full amount due for the paving except for assessments already collected, that as a condition of said payment the contractor should release all the assessment claims which he held and that the city should refund to abutting property owners all amounts already paid on account of such assessments.

5. In the Ordinance of December 30, 1955, it was recited that Stenton Avenue had developed into an arterial highway, as a result of which traffic had increased substantially, that the purpose of the paving was not to benefit the abutting property owners but the public generally in improving the flow of traffic within the city and that the owners of abutting properties derived no benefit from the paving but actually suffered a detriment in an increase in noise, dirt, noxious fumes and the creation of a parking problem.

6. No benefit has resulted to the abutting owners from this paving except to the owners of five properties, four gasoline stations and a milk bar.

## Discussion

This is a suit in equity seeking to enjoin the city from paying out any money under the Ordinance of December 30, 1955. This ordinance modified an earlier enactment of July 14, 1954, which authorized the paving, inter alia, of Stenton Avenue from Phil-Ellena Street to Murdoch Road and provided that the contractor be

paid solely from assessments on abutting property owners. The Ordinance of December 30, 1955, was passed after this paving had been completed, assessment bills issued by the city to the contractor, the assessment bills discounted and some of them collected. It provided that the city should pay the contractor the amount of the uncollected assessments upon release by him of all claims and should reimburse the abutting owners for all assessments paid by them.

1. Plaintiff contends that this ordinance constitutes a gift by the city to the contractor or abutting owners in violation of article 9, sec. 7, of the Constitution of Pennsylvania, which prohibits any city from appropriating money for or lending its credit to a corporation, association or individual, and also violates article 3, sec. 11, which forbids the payment of extra compensation to a contractor after services are rendered or the contract is made.

Plaintiff relies upon the cases of Harbold v. Reading, 355 Pa. 253 (1946), and Ciliberti v. Philadelphia, C. P. 3, Philadelphia County, June term, 1951, no. 404. In the Harbold case the Supreme Court, while observing that an original contract validly might provide for the payment of the full cost by the city, held that when the contract actually provides that the contractor is to receive payment only from the abutting owners, a statute which subsequently imposes an absolute liability on the city for the benefit of the contractor is invalid under article 9, sec. 7, and article 3, sec. 11, of the Constitution. The contractor's mere failure to collect certain of the assessments does not legally or morally obligate the city to reimburse him where the assessments are valid and the contractor has agreed to look solely to them for payment. The Harbold case, therefore, clearly is authority for the proposition that the ordinance before us is invalid if the assessments under the 1954 Ordinance were valid.

The same is true of the Ciliberti case where the validity of the assessments was not contested. There it was held: (1) That lack of any value in one of the assessed properties created no such moral obligation, (2) that the city could not relieve the property owners from paying admittedly valid assessments; (3) that the city, after issuing assessment bills, has no further power to pay for the improvement even though the contract provides that the city may elect to pay in warrants rather than assessment bills; and (4) that a clause in the ordinance finding as a fact that there was a moral obligation to the abutters did not determine that question, which is for the courts, citing 172 A. L. R. 1389. Judge Mawhinney concluded that it "would be intolerable to permit a municipality to return lawfully collected taxes or assessments after the complete discharge of the obligation".

2. The city, however, maintains that these authorities are inapplicable since the assessments were invalid because the abutting owners were not specially benefited by the improvement. Therefore, the city was legally obligated to the contractor, under the case of Vulcanite Paving Co. v. Philadelphia, 239 Pa. 524 (1913), for the amount of the uncollected bills. Furthermore, it was morally obligated to the property owners because of the improper assessment.

Plaintiff, in reply, argues: (1) That the city's evidence does not prove an absence of benefit to the abutters and that her own evidence establishes that they were benefited; (2) that benefit conclusively is presumed if the paving is an original paving, which this admittedly was, and (3) that the contract, under which the contractor assumed the risk of noncollection of the assessments, by reason of their invalidity or otherwise, makes this appropriation a gift to him.

The ordinance is valid if the assessments are wholly invalid. This follows from the holding in the Vulcanite

Paving Co. case, supra. There, as here, the contract provided that the contractor would accept assessment bills as payment and take the risk of their invalidity, and it further was agreed that the city should pay for paving in front of nonassessable property. The contractor, paid in assessment bills for paving in front of nonassessable railroad property, was allowed to recover from the city under the contract. The Supreme Court held that under this contract acceptance of these assessment bills did not constitute payment where the abutting property was not assessable for the work done. The language of the contract before us, we think, provides no support for a different result if the assessments are invalid because the abutting owners were not benefited. Therefore, the city would be liable to the contractor for the assessments which have not been collected. Under this case, it would appear that the contractor takes the risk only of such invalidity as arises from defective procedure or some similar cause other than nonassessability, which defeats the assessment.

Plaintiff contends, however, that to consider the validity of the assessments here is to sanction a collateral attack upon them after the time for a direct attack has passed. However, the Vulcanite case impliedly holds that the assessment of nonassessable property may be successfully attacked collaterally in Pennsylvania, if suit involving parties other than the assessed owner is a collateral attack. We think that an assessment of property can be similarly attacked if the property is not benefited. It would be hard to believe that an assessment for a nonoriginal paving, for instance, might not thus be challenged. It is to be noted that the statute itself provides for recovery within two years of invalid assessments actually paid: Act of April 13, 1943, P. L. 48, sec. 1, 53 PS §1261.

3. We are left then with the question whether special assessments for original paving are invalid where

levied on property actually not benefited. Plaintiff maintains that the properties conclusively must be presumed benefited where there is an original paving. Defendant argues, on the other hand, that benefit is a question of fact to be determined on all the evidence. Our cases have not passed upon this question. They have said that an assessment can be levied only if the property is specially benefited: Hammett v. Philadelphia, 65 Pa. 146 (1870). They have said that a nonoriginal pavement is not such a benefit as will justify an assessment: Leake v. Philadelphia, 171 Pa. 125 (1895); Philadelphia, to use, v. O'Brien, 176 Pa. Superior Ct. 235 (1954); Philadelphia v. Pachelli, 168 Pa. Superior Ct. 54, 56 (1950). They have not said that an original paving is always a benefit.

It is true that under earlier statutes, which directed that municipalities assess for improvements according to foot frontage, it was held no defense to such assessments that the property was not benefited at all: Michener v. Philadelphia, 118 Pa. 535 (1888). This line of cases, however, merely holds that the legislature lawfully could provide for assessment by foot frontage and deny an appeal from this determination because the use of a general rule is adminstratively convenient and acceptable if based upon a reasonable presumption of benefit. The legislature, however, presently has authorized the city only to assess "according to benefits": Act of May 16, 1891, P. L. 75, sec. 8, as amended; Act of April 29, 1937, P. L. 485, sec. 1, 53 PS §1721. We think that under this statute an assessment is invalid where the property was not benefited.

The city cites Tallahassee v. Baker, 53 So. 2d 875 (Fla. 1951), and Rafkin v. City of Miami Beach, 38 So. 2d 836 (Fla. 1949). Under these cases, the Florida courts must determine not only whether the property was benefited but also whether the assessment was greater than the amount of the benefit received. But

Pennsylvania courts do not perform the latter function in assessment proceedings. Our Supreme Court has held that where exceptions to the assessment report are based solely on an allegation that the assessment was too high, the exceptions must be dismissed: Murdoch v. Pittsburgh (No. 2), 223 Pa. 283 (1909).

4. Therefore, we consider whether the assessments here actually were invalid. The Ordinance of December 30, 1955, revoked the assessments on this basis. In it the council found as a fact that no benefit had accrued to the abutting owners. This finding revoking the implicit finding to the contrary in the earlier ordinance must be accepted by the court unless it is shown to be contrary to fact. The burden is upon plaintiff to prove the invalidity of this ordinance: Sablosky v. Messner, 372 Pa. 47, 58-59 (1952); Flynn v. Horst, 356 Pa. 20 (1947); Hadley's Case, 336 Pa. 100, 104 (1939). The declaration in the ordinance "is entitled not only to respect but to a prima facie acceptance of its correctness": Dorman v. Phila. Housing Authority, 331 Pa. 209, 222 (1938). Accord: Block v. Hirsh, 256 U. S. 135, 154 (1921).

Defendant's evidence here showed at least some detriment and there was no evidence of any benefit unless we presume it from the mere fact of the paving. Nothing in our cases holds that there is such a presumption except the negative inference that plaintiff seeks to draw from the silence on this question in the cases holding a nonoriginal paving is not a benefit. Plaintiff's evidence showed no benefit to the abutters. At most it questioned the proposition that the paving might be a detriment.

We do not mean to say that there might not be a rebuttable presumption of benefit from the mere fact of paving on the ordinary residential street, but in the case of an arterial highway such as this which was taken over as part of the State highway system, ceded

back to the city apparently for the purpose of having the city pave it and then receded to the State as a highway, no such presumption can stand against the councilmanic finding in the ordinance.

The fact that several properties which were gasoline stations and a milkbar actually may have been benefited from the paving does not in our opinion prevent the council from treating the area as a unit and making the whole contract a city obligation. Where council has sufficient reason to believe that all or a major part of the assessed properties in a district actually were not benefited, it would be unreasonable to hold that it must conduct extensive hearings to determine whether there might be one or two properties which validly could be assessed.

In view of the fact that nothing in the evidence contradicts the councilmanic finding in the Ordinance of December 30, 1955, that no benefit was received by the abutting properties from the paving in question, those properties were improperly assessed and the ordinance relieving them satisfied both legal and moral obligations of the city and is valid.

### Conclusions of Law

1. Eliminating the five properties named in finding of fact number six, no benefit accrued to the abutting property owners from the paving of Stenton Avenue between Phil-Ellena Street and Murdoch Road, and therefore the assessments against them provided for by the Ordinance of July 14, 1954, were invalid.

2. Since the assessments as to the great majority of the properties covered by this paving were invalid, the Ordinance of December 30, 1955, providing for repaying the assessments already paid and the elimination of those not yet paid is valid.

### Decree Nisi

The complaint is dismissed.

## Memorandum Sur Exceptions

FLOOD, J., December 27, 1956.—The court en banc is in general accord with the chancellor's disposition of this matter in his adjudication. However, plaintiff says she was misled as to her burden of proof. We do not feel that she would be entitled as a matter of right to a new trial on this state of the record if this were a jury case. On the other hand, we do not think that in an equity case, where the procedure is freer, she should be denied the opportunity in the present state of the record to present such evidence as she has as to benefit when she says she was misled as to her burden. The matter is therefore referred back to the chancellor in order to receive plaintiff's evidence as to benefit to the adjoining owners.

## Supplemental Adjudication

FLOOD, J., September 24, 1957.—In his original adjudication the chancellor dismissed the complaint attacking the validity of the Ordinance of December 30, 1955. This ordinance revoked paving assessments on certain properties made under an Ordinance of July 14, 1954. The chancellor found that the assessments under the 1954 Ordinance were invalid because the properties were not benefited and that consequently the revoking ordinance was valid. The court en banc referred the matter back to the chancellor to receive such evidence of benefit as plaintiff might present. Such hearing has been held, but the evidence presented by plaintiff does not, in our opinion, change the result.

We adhere to our view that the councilmanic finding in the 1955 Ordinance that the paving benefited the public generally and not the abutting owners, must be accepted unless it is shown to be incorrect. There was no finding of benefit in the 1954 Ordinance except insofar as a legislative determination of such fact may be implied from the assessment itself. The 1954 Ordinance was a blanket ordinance authorizing paving in many

areas, and any finding which may be implied in such case carries less weight, it seems to us, than the one in the Ordinance of 1955 applying to this stretch of paving alone. Certainly the earlier implied finding falls before the specific, explicit finding in 1955, unless the latter is shown to be in error. It is plaintiff's burden to show such error if he is to prevail.

The finding in the 1955 Ordinance is buttressed by the history of the street as a city street, a State highway, again a city street and finally a State highway once again. We need not repeat what we said on this head in the original adjudication. But since our first adjudication our attention has been called to the Ordinance of June 27, 1957, which exempts State highways from paving assessments when the city paves them. While this later ordinance does not, of course, govern the matter before us, it is evidence of the policy of the city consistent with its action here, and tends to show that the 1955 finding represents the real opinion of council as to benefits and is not a mere effort to aid favored property owners.

The question before us, then, is whether plaintiff's evidence is sufficient to undermine the councilmanic finding that no benefit accrued to the abutting owners by reason of the Stenton Avenue paving in question. In this inquiry we put aside the admitted fact that roughly five percent of the properties were benefited. This fact has no significance since council may treat the entire area as a unit.

Plaintiff gave evidence tending to show that the properties were benefited by: (1) The elimination of the dirt shoulders with their accompaniment of dust in dry weather and mud and ruts in wet weather; (2) the consequent improvement of drainage and parking conditions; (3) the physical improvement and increased physical attractiveness of the neighborhood. She contends that the improvement is evidenced by (4) the in-

creased value of the abutting properties; and (5) the facilitation of the financing of these properties.

Against plaintiff's evidence as to the elimination of dust and mud, property owners testified that litter has increased because of the heavy traffic, that increased noise, vibration and fumes emanate from the same source and that traffic now runs close to the curb and endangers the children. Some of the owners testified that they have to keep their windows closed on the Stenton Avenue side. Others said that they fear to allow their young children to play on the Stenton Avenue sidewalk.

Against the evidence of improved parking conditions by the elimination of the dirt shoulders, defendants presented testimony of property owners that it is now difficult to enter Stenton Avenue from their driveways.

The testimony was conflicting as to the effect of the paving on the amount of traffic, but it appears that traffic has increased in volume and that there has been a greater increase in truck traffic than in the number of private automobiles.

Plaintiff has attempted to show that the market values of the abutting properties have increased as a result of the paving. However, she has not presented sufficient evidence for us to make any conclusions one way or the other. She has submitted a list of all the abutting properties conveyed during the 10-year period prior to the paving and reconveyed thereafter. As might be expected, relatively few of the affected properties appear on the list. Conveyances are recorded for only 12 of 105 abutting properties during the relevant periods. Of these, six [1] show only a nominal considera-

---

[1] This includes one property which was sold for $13,000 prior to the paving and thereafter was sold for a consideration of $1 subject to a mortgage of $81,500, since satisfied. In the absence of some further explanation we can draw no conclusion from this latter conveyance.

tion for the conveyance occurring after the paving and so are of no help to us. Of the six remaining properties, two were sold at the same price as before, one at a decrease from $19,500, to $18,500, and three at substantial increases. As to these three properties, defendant has pointed out that these increases may be due to other factors [2] and while these factors are not in evidence, they do buttress his objections to the admissibility of plaintiff's list of sales. In any event, the list contains too few properties to establish any trend in the property values as a result of the paving and we agree that no useful conclusion can be drawn from it.

We apprehend that plaintiff is in substantial agreement on this and depends upon the list rather to rebut defendant's experts than as positive proof of her own case. For her own position, plaintiff relies chiefly on the evidence of four witnesses whom she qualifies as having special knowledge on the subject. The substance of their testimony was that paving makes a property more desirable and more eligible for mortgage loan financing and that this paving had that effect on the abutting properties with which we are concerned. De-

---

[2] As to the property located at the southwest corner of Stenton Avenue and Phil-Ellena Street, defendant points out that the final conveyance was to a construction company and argues that this indicates that this was not a real sale, but builder's transfer for the purpose of financing. In support of this argument defendant claims that a physical inspection shows that two ranch homes have since been built on the property. These have not yet been sold.

As to the property located at the northeast corner of Mt. Pleasant, and Stenton Avenue, where the price increased from $7,000 to $21,000, defendant points out that in the interim between the two sales a tavern was erected on the property and is now being operated there.

As to the property located at 6910 Stenton Avenue, defendant asserts that between the two sales a garage was constructed on the property, rooms added to the house and extensive landscaping done which would account for the $9,000 increase in the selling price.

fendant's witnesses, on the contrary, testified that property values generally decreased as a result of the paving, principally because the increased volume of traffic and the accompanying noise, dirt and litter made them less desirable for residential purposes. Plaintiff's evidence on value is not, in our opinion, of such character or quality as to rebut the prima facie finding in the 1955 Ordinance that the abutting properties were not benefited by the paving.

Plaintiff's final contention runs as follows: Assuming that there is merit to the contention that all of the consequences of the paving were not beneficial, that there was some benefit and some detriment, the extent of the assessments provided for adjustment of partial benefit and detriment. The $8 a front-foot assessment rate did not fully cover the cost of paving even the dirt shoulder alone. Consequently, the city, despite the assessment, assumed the cost of paving the center strip and part of the dirt shoulder. This end result is a fair equivalent of apportioning benefit and detriment and the cost of paving between the abutting property and the governmental authority.

This argument assumes a special benefit to the abutting owners, in spite of the councilmanic finding which we have accepted. If there were such benefit, council might have so apportioned the cost of the paving. As our Supreme Court has observed, "a street is not paved for the purpose of benefiting the abutting property only, but in order that citizens, denizens and transients may readily travel upon it, yet the abutting properties may be required to pay a proportionate part of the cost, not exceeding, however, the special benefits to them": Erie City's Appeal, 297 Pa. 260, 264 (1929). Had the properties been benefited and such an apportionment made, our scope of review would be extremely limited: Ibid. at 265. See Murdoch v. Pittsburg (No. 2), 223 Pa. 283 (1909).

However, the 1954 Ordinance did not purport to so apportion benefit and detriment. The $8 a front-foot assessment rate arises from a separate general ordinance (Philadelphia Code of General Ordinances, sec. 11-503(2)(a)) and does not represent an attempt by council to determine the benefit accruing to the properties here involved.

*Findings of Fact and Conclusions of Law*

Plaintiff has requested certain modifications and additions to our findings of fact. Findings nos. 1, 2, 3 and 5 are modified as follows:

1. The Ordinance of July 14, 1954, provided, inter alia, that Stenton Avenue from Phil-Ellena Street to Murdock Road should be paved and that the contractor should collect the cost thereof, exclusive of street intersections and in front of exempt properties, from abutting owners as provided by the Ordinance of October 9, 1951.

2. In pursuance of the Ordinance of July 14, 1954, a contract was made with General Asphalt Paving Company, in pursuance of which it paved this portion of Stenton Avenue.

3. The contract provided that the city should pay the contractor in assessment bills issued against abutting property, that the contractor should accept the bills as cash, that the city did not in anywise guarantee the value, validity or legality of the assessment bills and that in the event of failure to collect them, no recourse should be had against the city, the contractor agreeing to accept and assume all risk of failure to collect the bills, whether such failure be due to invalidity of the bills or any other cause.

5. In the Ordinance of December 30, 1955, it was recited that Stenton Avenue had developed into an arterial highway, as a result of which the flow of

traffic on said street increased substantially; as a result of the increase in traffic, it became necessary to pave the street; that the purpose was not to benefit the abutting property owners, but the public generally in improving the flow of traffic within the city; the benefits from the paving inured to the public generally because the street was better able to accomodate the heavy flow of private vehicles, as well as vehicles operated by common carriers, and that the owners of abutting properties derived no benefit from the paving, but actually suffered a detriment in an increase in noise, dirt, noxious fumes and the creation of a parking problem; as a result council desired the cost of the paving not to be assessed against the abutting property owners.

The original findings numbers 4 and 6 are reaffirmed.

We make the following additional findings requested by plaintiff:

7. The work under the contract was completed by the contractor by the spring of 1955 and assessment bills issued to him in payment therefor.

8. (a) Prior to its paving, Stenton Avenue consisted of a 22-foot wide macadam strip which had to be surfaced every two or three years, with unpaved, dirt shoulders, each 10 feet wide, stabilized from time to time with oil, cinders or similar materials so as to avoid severe depressions and to minimize or reduce any possible accumulation of dust.

(b) After heavy rains, the shoulders being unpaved, would be muddy, tended and did develop ruts and depressions which might and did collect small pools of water.

(c) During the periods of prolonged dry weather, a dust condition might and did from time to time develop on account of the unpaved shoulders.

(d) The drainage, while good, was not ideal and was not permanent.

(e) The macadam center was not a perfectly smooth surface, but contained undulations, developed cracks and frost boils which had to be patched and was subject to upheaval following winter weather condition.

9. Stenton Avenue was paved from curb to curb, the paving consisting of a 10-inch concrete base and two and a half inch surface consisting of one inch of binder and one and a half inches of asphalt.

10. The paving of Stenton Avenue constituted an original paving.

11. As a result of the paving, the dirt shoulders and the prior condition of dust, mud and dirt, and drainage problems, due to the dirt shoulders, were eliminated.

12. The abutting property owners were not assessed the full cost of the paving, but were assessed at the rate of $8 a front-foot as provided by an Ordinance of 1951, Philadelphia Code of General Ordinances, sec. 11-503(2) (a), and this rate of assessment did not cover the full cost of paving the dirt shoulders and did not cover any part of paving the center of the street; this rate of assessment paid for paving of 18 of the 42-foot width of Stenton Avenue.

The original conclusions of law are reaffirmed.

The remaining requests of plaintiff are refused.

### Decree Nisi

The complaint is dismissed.

### Final Decree

The action of the court in the above matter is as follows:

December 4, 1957, 10:00 a.m.: Exceptions dismissed. The decree nisi of September 24, 1957 is made

final for the reasons set forth in the adjudication and supplemental adjudication of the chancellor.