William H. Oakford, Agent for F. A. Oakford, and F. A. Oakford, Appellants, *v.* Samuel F. Nixon and J. Frederick Zimmerman, Copartners, trading as Nixon & Zimmerman.

*Landlord and tenant—Eviction.*

While an eviction was originally a dispossession of the tenant by some act of his landlord, or by failure of the latter's title, it has come in later years to include any wrongful act of the landlord either of commission or omission which may result in an interference with the tenant's possession in whole or in part.

*Landlord and tenant—Covenants for quiet enjoyment—Eviction—Rent.*

The rent is suspended by an eviction because it is plainly unjust that the landlord be permitted to collect it while by his own act he deprives his tenant of the possession which is the consideration for it. But the landlord is not responsible for the acts of others lawfully done on their own premises. He is liable only for his own acts and for such acts of others as it was his duty to protect his tenant from.

The covenant for quiet possession relates only to acts of the lessor and those acting under him, or of the holder of a better title, and do not extend to the ill natured conduct of other persons by which the value or comfort of the leasehold may be diminished.

*Landlord and tenant—Lease of blank wall—Eviction—Rent—Acts of strangers.*

Plaintiffs were the tenants of a two story building on the east side of Ninth street above Chestnut street in the city of Philadelphia. On several of the lots between their premises and Chestnut street were erected one story buildings, so that the south wall of their building could be seen from Chestnut street which is one of the most frequented streets of the city.

Plaintiffs leased the blank surface of this wall to an advertising company which threw advertisements on the wall by means of a stereopticon. Subsequently the tenant of the adjoining one story building towards Chestnut street erected upon the roof of his building a frame to support a screen on which views could be displayed. The frame and screen almost entirely interfered with the view of plaintiffs' wall. This wall however, was a party wall, and the right of the plaintiffs did not extend beyond its center. Neither the owner nor the tenant of the adjoining building objected to or denied the validity of plaintiffs' lease. *Held,* (1) that the action of the tenant of the adjoining premises being that of a stranger did not constitute an eviction; (2) that plaintiffs' lessee assumed the risk of the actions of the owners and tenants of the property between plaintiffs' premises and Chestnut street; (3) that there was no failure of consideration, as the right to use the wall had not been denied, but only reduced in value; (4) that if the depreciation was not chargeable to plaintiffs, it was the misfortune of the lessee to have had its possession made useless by the intervention of parties with whom it had no contract, and against whose conduct it had no covenant; (5) that it was error to give binding instructions for the lessee in a suit for the rent.

Argued Jan. 20, 1896.    Appeal, No. 182, July T., 1895, by plaintiffs, from judgment of C. P. No. 4, Phila. Co., December Term, 1892, No. 248, on verdict for defendants. Before STER-RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Reversed.

Assumpsit for rent.    Before ARNOLD, J.
The facts appear by the opinion of the Supreme Court.

The court charged as follows :
[The agreement on which this suit is based, while called a lease, and containing the legal language of a lease, is, in reality, merely a contract for the use of a wall for a particular purpose ; that is, for the purpose of displaying stereopticon views, advertising and posting theatrical and other bills on the southern side of the roof and wall only ; differing from the use of a house to live in or factory to work in. It was for the use of a wall for a purpose, and when that use could no longer be furnished, and the bill company was unable to obtain that for which it agreed to pay, the consideration of the contract failed, and from that time on it was at an end.    Or, if we treat it as a lease, there has been an eviction by a superior title. The wall is a division or party wall, and the south side of it pertained to the property of

the adjoining owner or occupant. In any aspect of the case, treating the contract as what it really is, a contract for the use of a wall for a certain purpose, and the consideration having failed, the. obligation to pay is at an end. Or treating it as a lease, there has been an eviction by a superior title, by the tenant of the adjoining property, and in that case there can be no recovery for any of the moneys due upon this contract or lease after the adjoining owner saw fit by his act to pursue his right of proprietorship and take the use of the wall to himself and thus prevent the American Bill Posting Company from having the use of the wall which Mr. Oakford contracted to furnish it.

Therefore, you will render a verdict in favor of the defendants.] [3]

Verdict and judgment for defendants. Plaintiffs appealed.

*Error assigned*, among others, was (3) charge of the court as above, quoting it.

*Avery D. Harrington*, with him *J. Alfred Smith*, for appellants.—The contract in suit is a lease, and the amount stipulated to be paid as rent is rent: 2 Bouvier's Law Dictionary, 18.

A license, if under seal, may take effect as a covenant; as where it authorizes the party to whom it is made to go upon the land of the party granting it, and use the land for his own profit, and in that case it would be equivalent to a lease: 8th ed. Taylor's Landlord and Tenant, par. 251; Branch v. Doane, 17 Conn. 402; Davis v. Townsend, 10 Barb. 333; Smith v. Simons, 1 Root (Conn.), 318.

A wall erected by the owner of two adjoining lots partly on each is not a party wall within the meaning of the statutes: Weston v. Arnold, 22 West, Eng. Chan. Rep. 284; Finley v. Stuebing, 38 Leg. Int. 386.

When one of two parties to a contract must suffer, it shall be the one who is in default: 3 Addison on Contracts, 1196.

Still less will unexpected difficulty or inconvenience short of impossibility serve as an excuse: Hand v. Baynes, 4 Whart. 204.

If the thing promised be possible in itself, it is no excuse that the promisor became unable to perform it by causes beyond his own control, for it was his own fault to run the risk of

undertaking, unconditionally, to fulfill a promise when he might have guarded himself by the terms of his contract: R. R. v. Reichert, 58 Md. 261; The Harriman, 9 Wallace, 161; Harmony v. Bingham, 12 N. Y. 99; Jones v. U. S., 96 U. S. 24; Bacon v. Cobb, 45 Ills. 47; Adams v. Nichols, 36 Mass. 275; Barns v. Wilson, 116 Pa. 303; Huber v. Baum, 152 Pa. 626.

*James H. Shakespeare,* for appellees.—A lease is a demise of land or tenements, and possession must accompany the lease: Wood's L. & T. chap. XLII. pp. 793, 6, 7, 8; Taylor, L. & T. 248; Doran v. Chase, 2 W. N. C. 609.

An eviction by a paramount landlord of any portion of demised premises will suspend the whole rent if the tenant promptly abandons the whole premises: Seabrook v. Moyer, 88 Pa. 417; 2 Brewster's Practice, 524.

Actual physical expulsion is not necessary to constitute an eviction, but any interference with tenant's beneficial enjoyment will amount to an eviction in law: Doran v. Chase, 2 W. N. C. 609; Briggs v. Thompson, 9 Pa. 340.

The instrument sued upon is void because the south wall (which was the subject thereof) is a party wall, and a party wall can be used only for building purposes, and not for painting or displaying signs or advertisements thereon. This suit was not for use or occupation, but was for a future use of something that appellants had no right or authority to promise to give: Wistar v. Pub. Society, 2 W. N. C. 333.

Appellants being tenants of 29 South Ninth street, rented the inside and not the outside, and had no right to put, or to grant a license to any one to put, any signs or advertisements on the outside of the south wall thereof (which wall is the subject of the instrument sued upon), unless with the consent of the landlord; and both appellants and their licensee would be liable to the landlord in trespass: Hele v. Stewart, 19 W. N. C. 129; Devlin v. Snellenburg, 132 Pa. 186.

OPINION BY MR. JUSTICE WILLIAMS, October 5, 1896:

The facts upon which the legal question presented on this record is raised are quite novel. It appears from the evidence that Andrew Moore is the owner of a row of buildings between the hotel known as the Girard House, and Ninth street, extending

from Jayne street to Chestnut. The most northerly of these buildings is No. 29 South Ninth street, and it has been occupied for some time by the plaintiffs as lessees of Moore. The building next to No. 29 is in the occupancy of Geo. M. Moore as a tenant, and is but one story high. The other buildings down to Chestnut street are also but one story high, while No. 29 is two stories in height. The south wall of No. 29 is for this reason plainly visible above the buildings south of it to persons going in and out of the post office and to persons passing along Chestnut street, at its intersection with Ninth street, and for some distance westwardly therefrom.

The American Bill Posting Co., Limited, desired to make use of the conspicuous surface so presented for the display of advertisements by means of pictures and words thrown upon the wall by a stereopticon; and it entered into a contract, in the form of a lease, with the plaintiffs for the use of the roof and south wall of No. 29 at an agreed rent. The defendants are the sureties of the company upon this contract. The company took possession of the roof and south wall in pursuance of its contract, and entered upon the display of its advertisements, which were thrown upon the south wall by means of a stereopticon. Sometime afterwards Geo. M. Moore made a lease of the roof of the building occupied by him for a similar purpose to the American Exhibition Co. The use of this building was made possible by the erection of a frame upon the roof to support a screen on which views could be displayed. This frame and screen when in place nearly covered up the south wall of No. 29 and rendered it practically valueless to the Bill Posting Co. It thereupon abandoned the effort to use it and refused to pay accruing rent. The position taken by it was that it had been evicted from the leasehold, and that the rent was as a matter of law suspended in consequence. If the facts amount to an eviction the defense is well taken. It may be conceded that the plaintiffs had no title to the south wall of No. 29. It was a party wall, and the rights of the plaintiffs did not extend beyond its center; its southern face belonged, for all purposes, to the owner of the land on which that half of the wall rested; but the company was put into actual possession of its surface. Neither the plaintiffs, nor the owner nor the tenant of the adjoining building has objected to or denied the validity of the

lease. What has happened is that the tenant of the adjoining property has made a contract with another company for the use, not of the wall of No. 29, but of a frame erected on his own roof, and that the use of this frame has the effect of covering up considerable of the surface of the south wall of No. 29, and greatly reducing its value as a surface for the display of advertisements. Is this an eviction? Originally an eviction was understood to be a dispossession of the tenant by some act of his landlord, or by the failure of his title: Anderson's Law Dictionary, 418. It has come in later years to include any wrongful act of the landlord which may result in an interference with the tenant's possession in whole or in part. The act may be one of omission as well as of commission.

The rent is suspended by an eviction because it is plainly unjust that the landlord should be permitted to collect it while by his own act he deprives his tenant of the possession which is the consideration for it. But the landlord is not responsible for the acts of others lawfully done on their own premises. He is liable only for his own acts and for such acts of others as it was his duty to protect his tenant from: Tiley v. Moyers, 43 Pa. 404; Hoeveler v. Fleming, 91 Pa. 322. If Mrs. Oakford or Andrew Moore, her landlord, or any person having an estate in fee simple, or by lease in the party wall on the south side of No. 29, had objected to the use of that wall by the Bill Posting Co., and ousted it from its possession, whether by legal proceedings or by physical interference, an eviction would have taken place. The right to use the wall would in that case have been taken away from the tenant and the duty to pay rent would have ceased. But neither Mrs. Oakford nor her landlord, nor any other person has objected. No ouster by legal proceedings or by physical interference has taken place. The lessee is still in possession so far as the plaintiffs or any one having any right to question its possession is concerned; but that possession has been lessened, perhaps practically destroyed, by the action of an adjoining tenant. If this action was a lawful one, within the limit of his own premises, the plaintiffs cannot be held liable for it. The covenants for quiet possession relate only to acts of the lessor and those acting under him, or of the holder of a better title. They do not extend to the ill natured conduct of other persons by which the value or the comfort of

the leasehold may be diminished. The probability that the view of the south wall of No. 29 would be cut off by some intervening structure between it and Chestnut street erected by one of the owners or tenants in the row, was one that could be estimated by the company as well as by Mrs. Oakford. If the company desired to guard against this contingency it could have been done so by contract with the intervening tenants or by a special covenant with Mrs. Oakford. But the company made no inquiry and took no precautions. It assumed the risk of the actions of the owners and tenants of the property between No. 29 and Chestnut street and the result has been what should have been anticipated. The tenant of an intervening property has undertaken to furnish a wholly different surface for the display of advertisements which when in use conceals the south wall of No. 29 from view and takes away its value. This does not seem to us to be an eviction. The tenant has been disappointed but not dispossessed. He is in possession of the space he leased but he cannot use it in the manner he anticipated because of the action of a third person done within the limits of his own leasehold. If this was not an eviction, for the same reason it does not amount to a failure of consideration, as the case appears on this record. The consideration of the promise to pay rent was the right to the use of the roof and south wall of No. 29. That right has not been legally denied, but its value has been reduced. Since the action of Geo. M. Moore it is not worth the rent the Bill Posting Co. promised to pay for it. But if the depreciation is not chargeable to the plaintiffs it is the misfortune of the company to have had their possession made useless by the intervention of parties with whom they had no contract, and against whose conduct they had no covenant. The judgment is reversed and a venire facias de novo awarded.