49 N.J. Super. 155 (1958)
139 A.2d 318
TIDEWATER OIL COMPANY, A CORPORATION, PLAINTIFF,
v.
CAMDEN SECURITIES COMPANY, A CORPORATION, MUTUAL BENEFIT LIFE INSURANCE COMPANY, A CORPORATION, AND FIRST CAMDEN NATIONAL BANK AND TRUST COMPANY, A CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 28, 1958.
*157 Mr. Albert B. Melnik (Messrs. Hermann, Melnik & Lowengrub), for plaintiff.
Mr. William C. Gotshalk, for defendant Camden Securities Company.
Mr. Alexander C. Wood, 3rd (Messrs. Richards, Capehart & Wood), for defendant Mutual Benefit Life Insurance Company.
Mr. Walter N. Read (Messrs. Archer, Greiner, Hunter & Read), for defendant First National Bank & Trust Company.
HANEMAN, J.S.C.
The plaintiff seeks injunctive relief in connection with the use of certain lands in Delaware Township, Camden County, New Jersey, and compensatory and punitive damages for past interference with such use.
The facts are as follows:
Prior to July 1954 plaintiff had been interested in obtaining a site for a gasoline service station on certain lands *158 situate in Delaware Township, Camden County, New Jersey, and abutting U.S. Route 38, a heavily travelled four-lane highway. These lands were bounded as well by two other public streets, i.e., Woodland Avenue and Harvard Avenue. It notified defendants Aaron Heine and William Fearn, officers of Camden Securities Company, of its interest in leasing said lands, with a completed service station thereon erected. The said Fearn was, as well, an officer of Arbill Construction Company which, it was intended, would make the necessary improvements thereon.
Camden Securities Company obtained title to the lands and negotiated with plaintiff for a lease. Although testimony was adduced by the defendant that Camden Securities Company was not primarily motivated in securing title because of plaintiff's avowed interest, I do not believe this to be true.
At all times during these negotiations it was clearly understood by all of the parties that plaintiff was interested in obtaining this location because it abutted the highway (U.S. Route 38) and motorists travelling thereon would have direct access to the proposed station. The presence of the other two abutting streets was of little, if any, interest to the plaintiff.
During the negotiations it became known that the New Jersey State Highway Department intended to widen U.S. Route 38 adjacent to the locus in quo. Both the plaintiff and Camden Securities Company became firmly convinced that the State Highway Department would take the 20 feet immediately adjacent to the existing roadway for highway purposes. As Heine expressed it in his testimony, "There was never any doubt in anyone's mind; never any contingency contemplated involving the non-taking by the State of the twenty feet. That was supposed to be an accomplished fact."
Under date of September 24, 1954 a lease was entered into between plaintiff and Camden Securities Company. Following the detailed metes and bounds description, the lease provided:
*159 "EXCEPTING THEREOUT and therefrom a strip of land 20' in width the southerly line of which is the present Northerly line of New Jersey State Highway Route #38 (80 feet wide) and the Northerly line being parallel with the present Northerly line of New Jersey State Highway Route 38 (80 feet wide) and 20 feet therefrom if measured on a line at right angles thereto: The Westerly end of said strip being the Easterly line of Woodland Avenue and the Easterly end of said strip being the dividing line between lots 125 and 126 on Plan of Merchantville Acre Farms aforesaid."
By virtue of this exception, the 20 feet it was understood would be taken by the State was excluded from the demised premises and the southerly line of the demised premises was a distance of 20 feet from the northerly right of way line of U.S. Route 38.
The lease further provided:
"1  Masonry service station building, Tide Water Associated Oil Company standard type `C', porcelain enamel front and two sides, with 2 bays complete with plumbing, heating and electrical wiring."
"22. It is agreed that lessor will at lessor's own cost and expense procure and deliver to lessee, on or before December 3, 1954, a survey of the demised premises, prepared in accordance with lessee's standard survey procedure, together with all necessary approvals of the curb cuts and ramps indicated on the preliminary plot plan dated September 15, 1954. On receipt of said survey lessee will prepare and deliver to lessor a final plot plan showing the location of the service station building and the layout of equipment on the demised premises. Lessor will at lessor's own cost and expense develop the demised premises as a gasoline service station, erecting a new building, with two bays thereon and providing all equipment (except such equipment as lessee has hereinafter agreed to provide) and perform all grading, paving and installation work called for in lessee's standard plans and specifications."
All of the plans, preliminary and final, exhibit ramps traversing the 20-foot excluded area so as to give access to the service station on the demised premises proper from the old Northerly line of U.S. Route 38. The ramps were actually constructed of bituminous concrete, which is the same surfacing laid by the Camden Securities Company on the demised premises.
Prior to the construction of the ramps Fearn, as assistant secretary of Camden Securities Company, made application to the New Jersey State Highway Department for leave to *160 construct the same, designated in the application as "entrances." The permit as issued by the State Highway Department for "Three entrances to a service station" reads in part as follows:
"Gasoline pumping equipment or sales stands will be placed on your own property thirty feet from the line of right of way of the highway."
"This permit authorizes the construction of three driveways each thirty-five feet in width, measured along the curb line of the highway and located and spaced in accordance with the attached blue print plan which forms a part of this permit, has been amended in yellow crayon in this office and is entitled: `Proposed Service Station Rt #38 & Woodland Ave. Delaware Township, Camden Co.  N.J. Lessor: Tide Water Associated Oil Co., N.Y.  N.Y. Owner: Camden Securities Co., 126 N. Broadway, Camden, N.J.,' scale 1" equals 20'; dated October 20, 1954."
Early in March 1957, negotiations for acquisition having failed, the State Highway Commissioner proceeded to condemn certain of plaintiff's lands then required for U.S. Route 38. The complaint as filed demonstrated that the lands sought were not of the width of 20 feet, as all parties to this transaction had contemplated, but rather were of an irregular size, being 10 feet at the widest part and tapering to a point. This will leave a strip ranging in width from 10 to 20 feet between the northerly line of U.S. Route 38 and the lands specifically demised to plaintiff. The title to this strip of land will remain in Camden Securities Company.
After it was learned that the State would not take the entire 20 feet, negotiations were undertaken between plaintiff and Camden Securities Company in an attempt to reconcile their differences on the question of rent and option price. Although some time elapsed during these negotiations, they came to naught. Thereafter, Camden Securities Company constructed a concrete curb along the entire original U.S. Route 38 frontage, blocking automotive entrance to the service station.
Plaintiff now seeks a mandatory injunction compelling Camden Securities Company to remove the curb, a prohibitory *161 injunction preventing Camden Securities Company from further interfering with the use of the ramps, and compensatory and punitive damages for the deprivation of the use of the ramps.
At the outset it must be recognized that the lands in question were neither expressly demised to plaintiff nor was an express easement granted therein. The only basis upon which plaintiff can obtain relief is upon the theory of an implied easement of necessity.
Easements of necessity arise by virtue of inference or implication of an intent implied from the facts surrounding the primary conveyance. They are not the result of a direct express grant. 2 American Law of Property 255 (§ 8.31 et seq.); Restatement, Property, § 476 (1944).
The easement which plaintiff here seeks cannot, in a strict sense, be designated as an easement of necessity in the classical sense, as plaintiff has a means of ingress to and egress from the demised lands other than that which could be afforded over the disputed lands, and since without the easement sought he would not be deprived of any access to and beneficial use of the property.
The "necessity," however, which may give rise to an easement does not necessarily connote that without an easement the dominant tenant could have no beneficial enjoyment of his lands whatsoever, and the word should be understood as meaning "reasonably necessary for convenient, comfortable or beneficial enjoyment." Kelly v. Dunning, 43 N.J. Eq. 62 (Ch. 1887), affirmed sub nom. Dunning v. Kelly, 46 N.J. Eq. 605 (E. & A. 1890); Karason Co. v. Anglo-American Leather Co., Inc., 136 N.J. Eq. 344 (Ch. 1945). Such designation is preferable to the naked use of the word "necessity."
The basic principle upon which rests the creation of easements by implied grant was stated in A.J. & J.O. Pilar, Inc., v. Lister Corp., 38 N.J. Super. 488 (App. Div. 1956), affirmed sub nom. A.J. & J.O. Pilar, Inc., v. Lister Corp., 22 N.J. 75 (1956), as follows:
*162 "* * * that the parties to the conveyance are presumed to act with reference to the actual, visible and known condition of the properties at the time and to intend that the benefits and burdens manifestly belonging respectively to each part of the entire tract shall remain unchanged."
The theory upon which easements of reasonable necessity are implied and the necessary attendant elements are well expressed in 2 American Law of Property, supra, and require no paraphrasing. It is there stated:
"The creation of an easement by conveyance is a result of an indication of intention by the owner of the land subjected to the easement. This intention may be indicated in various ways: by the use of language for that purpose, by acts without the use of language, or by language used for the purpose of showing some intention other than the creation of an easement.

* * * * * * * *
Although the creation of an easement by implication results from an inference drawn from facts other than the language of the conveyance containing the implication, the drawing of the inference that an easement was intended to be created can always be prevented by language in the conveyance which negatives such an intention.

* * * * * * * *
The drawing of the inference that an easement was intended consists often in ascribing to the parties to a conveyance an intention they never in fact had. Often where such an inference is drawn they have failed fully to think through all the consequences of the conveyance being made, with the result that it is left with a less complete expression than would have been used had they done so. To fill up common gaps resulting from incomplete thought the courts have developed rules of construction. Such rules have, in their application to conveyances, the effect of protecting parties to a conveyance from their lack of forethought by ascribing to them an intention such as it seems likely they would have had and probably would have expressed had they foreseen the particular problem which the rules are called upon to solve. Inferences of intention not expressed in words represent an extreme example of this process. Inferences of this kind are involved in the creation of easements by implication.
The less complete the language, the more is left to construction. The less complete the expression of intention in words, the greater the need for construction. The greater the need for the application of rules of construction, the less the certainty that an actual intention will be discovered. As certainty becomes less probable, the process of finding the intention to be ascribed becomes more artificial. *163 As it becomes more artificial, the more precise and the more complete become the rules of construction to be applied."
See also Restatement, Property, supra.
Here the facts lend themselves perfectly to an implied easement. The easement here sought is an implied easement of grant and not reservation. The parties quite patently never considered a situation other than that the lands demised would abut the highway as widened. It was taken as a matter of course and granted, that the State would take the lands retained by the landlord and excluded from the lease. The purpose of excluding the lands was to permit the landlord to obtain the full consideration to be paid by the State. All parties knew and recognized that it was reasonably necessary for the plaintiff to have direct access to the state highway to obtain a full and complete enjoyment of his lease. The amount of rent was predicated upon this assumption. The parties were so certain that the State would take the excepted land that they lacked the forethought to provide for the eventuality of this hypothesis proving false. The entire course of their conduct gives rise to such a conclusion.
I find, therefore, that the plaintiff is entitled to an easement of travel over the lands here involved and is therefore entitled to both a mandatory and prohibitory injunction.
On the other hand, I find that the Camden Securities Company did take into consideration the fact that it would receive some consideration from the State for the purchase of the 20 feet, when it determined the rental to be charged plaintiff for the balance of the tract. It is, therefore, equitably entitled to receive some additional rental from plaintiff for the future use of the lands which both plaintiff and it had conceived would be purchased by the State. He who seeks equity must do equity.
This maxim is especially applicable here because of the particular circumstances present, including the imposition of an easement relying, in main, upon the conduct of the parties and not upon any express words of grant.
*164 Unless the parties can agree upon the amount of such rental, I shall establish the amount on a short day.
It has been admitted by plaintiff that it failed to sustain its demand for compensatory damages. Since there is absent proof of any actual damage sustained, the demand for such damages is denied.
Plaintiff, however, seeks punitive damages. We do not pass upon the right of plaintiff to recover punitive damages, absent proof entitling it to compensatory damages. Punitive damages are not awarded upon theory of compensation to the sufferer, but as a punishment to the offender. Hulbert v. Arnold, 83 N.J.L. 114 (Sup. Ct. 1912).
In King v. Patrylow, 15 N.J. Super. 429 (App. Div. 1951), the court said:
"The emphasis is upon the reckless indifference to consequences of the deliberate act or omission in the face of known circumstances and the high degree of probability of producing the harm. `To establish a willful or wanton injury it is necessary to show that one with knowledge of existing conditions, and conscious from such knowledge that injury will likely or probably result from his conduct, and with reckless indifference to the consequences, consciously and intentionally does some wrongful act or omits to discharge some duty which produces the injurious result.' Staub v. Public Service Ry. Co., 97 N.J.L. 297 (E. & A. 1922). The definition adopted by the Restatement is substantially the same but is designated conduct `in Reckless Disregard of the Safety of Another' rather than as conduct `willfully injurious.' It reads: `The actor's conduct is in reckless disregard of the safety of another if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him. (Restatement, supra, sec. 500.)"
Here, the acts of the defendant failed in a number of vital particulars to entitle the plaintiff to punitive damages. The right of plaintiff to an implied easement was not so crystal clear. Without an adjudication to that effect by the court, as to constitute defendant's acts as willful or malicious, plaintiff's demand for punitive damages is denied.
Judgment will be entered accordingly.