McCargo et al., Appellants, *v.* Evanson.

466

Argued November 17, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, ERVIN, and WATKINS, JJ. (WOODSIDE, J., absent).

*Edmund K. Trent*, with him *Reed, Smith, Shaw & McClay*, for appellants.

*Ella Graubart*, with her *B. A. Karlowitz*, and *Patterson, Crawford, Arensberg & Dunn*, for defendants, appellees.

*David Stahl*, Assistant City Solicitor, with him *J. Frank McKenna, Jr.*, City Solicitor, for City of Pittsburgh, additional defendant, appellee.

OPINION BY RHODES, P. J., March 18, 1959:

This is an action in equity which was instituted by the owners of several properties in the vicinity of the T intersection of Highmont Road and Shady Avenue in the City of Pittsburgh. They sought to enjoin the defendants Jacob A. Evanson and Mildred Throne Evanson and their building contractor from constructing a driveway and sewer connection from the Evanson lot across an adjoining 10-foot strip of land to Highmont Road, a public highway. The 10-foot strip of land is within the dedicated boundary of Highmont Road, but forms no part of the actual roadway or sidewalks.

The question is whether the dedication of this strip was limited, and if so to what extent. The Evansons assert that the land was dedicated without restrictions; plaintiffs contend that the dedication was limited, and that the Evansons have no legal right to construct the proposed driveway and sewer across the said 10-foot strip to Highmont Road. All plaintiffs have driveways across the sidewalk to the cartway of Highmont Road.

On September 18, 1956, the Evansons purchased a lot which was part of a larger property formerly owned by the late Chief Justice FRAZER. On April 24, 1957, they obtained a permit from the City of Pittsburgh to construct a dwelling upon the lot and to construct a driveway and sewer connection across the disputed 10-foot strip of land to Highmont Road. The plaintiffs unsuccessfully attempted to have the building permits revoked, and, on June 15, 1957, instituted the present equity action to enjoin construction of the driveway and sewer connection. A temporary injunction was

obtained upon posting a bond in the amount of $2,500. The Evansons joined the City of Pittsburgh as an additional defendant. After a hearing the chancellor filed an adjudication and decree nisi dissolving the preliminary injunction and dismissing the complaint. The plaintiffs' exceptions were heard and dismissed by the court in banc which affirmed the chancellor's decree dismissing the complaint and made absolute the decree nisi. Four of the plaintiffs (David McCargo and Gretchen B. McCargo, No. 237, April Term, 1958, and Edmund K. Trent and Helen Trent, No. 238, April Term, 1958) have appealed to this Court.

The essential issues are both factual and legal. The factual findings of the chancellor affirmed by the court in banc and supported by the evidence indicate the following.[1] In September, 1937, Christine Miller Clemson and her son, Richard E. Clemson, were the owners of a large tract of land on the west side of Shady Avenue adjoining on the left, but not including, the Frazer lot. By a plan of lots known as the Highmont Plan of Lots and recorded on November 18, 1937, the Clemsons laid out and dedicated to the City of Pittsburgh a public road known as Highmont Road. The plan shows the tract of land dedicated for the street as being 42 feet wide at Shady Avenue where it begins, and widening as it progresses past the property now owned by the Evansons. It then narrows to a uniform width of 32 feet at the point where the lots as laid out commence, and continues at that width through the development. On October 25, 1937, by Ordinance No. 415, the City of Pittsburgh fixed the width of Highmont Road at 22 feet, with 5-foot sidewalks on each side, and provided that "the remaining portions of the road lying

[1] See *King v. Clark*, 183 Pa. Superior Ct. 190, 195, 130 A. 2d 245.

without the lines of the roadway and sidewalks as above described shall be used for slopes, parking, retaining walls and steps." On November 13, 1937, by Ordinance No. 435, the City of Pittsburgh formally accepted for public use the dedication of Highmont Road as "located and dedicated in said plan." The plaintiffs[2] contend that the dedicators never intended to grant the public or defendants' predecessors in title any broader use in the 10-foot strip than an easement for foot paths, slopes, and parking. The chancellor concluded, however, that the 10-foot strip abutting the Evanson property was dedicated to, and accepted by, the City as part of Highmont Road; that the dedicators and the City did not intend to restrict the use of the strip in such a way as to prohibit the Evansons' proposed driveway and sewer connection; and, accordingly, that the plaintiffs could not restrain the construction of the driveway and sewer connection to Highmont Road from the proposed dwelling of the Evansons.

Dedication of land to public use results when an offer of a landowner to dedicate land is accepted by the public. *Vendetti Appeal*, 181 Pa. Superior Ct. 214, 222, 124 A. 2d 448. Where an owner of land subdivides it into lots and streets on a plan and sells the lots in conformity thereto, there is not only an implied grant to the purchaser of a lot that the street shall be forever open to the public use, but there is a dedication of the streets to the public for the use of all persons. *Whit-*

---

[2] The plaintiffs Trent own a lot and dwelling not in the Highmont Plan of Lots but abutting on the north side of Highmont Road at a place where Highmont Road forms a T intersection with Shady Avenue. The other plaintiffs are the owners of lots and dwellings erected on ten of the Highmont Road lots under the plan. The plaintiffs Trent, on April 30 and May 10, 1957, obtained title to the 10-foot strip of land from the former owners, subject to the rights acquired by the City and the public.

*taker Appeal,* 386 Pa. 403, 407, 126 A. 2d 715. In 1937, the Clemsons recorded the Highmont Plan of Lots, and thereby laid out and dedicated Highmont Road as a public road to the City of Pittsburgh. The plan shows Highmont Road as including not only the 22-foot roadway and the 5-foot sidewalks, but also the 10-foot strip here involved. The intent of the Clemsons obviously was to dedicate the entire right of way including the 10-foot strip.[3] There is no restriction appearing in the deed of dedication. By Ordinance No. 435, the City of Pittsburgh accepted the dedication of the entire Highmont Road as shown in the plan for public use and for highway purposes. It is true that by Ordinance No. 415 the City of Pittsburgh fixed the width of the roadway at 22 feet and the width of the sidewalks on each side at 5 feet. This, however was obviously done to make the paved road of uniform width throughout the development. The fact that Ordinance No. 415 provided that "the remaining portions of the road lying without the lines of the roadway and sidewalks as above described shall be used for slopes, parking, retaining walls and steps" is not restrictive or exclusive in the nature of the public uses to which the additional land could be put. It is significant that Ordinance No. 415 was not the accepting ordinance, but was merely the ordinance fixing the grade and uniform width of the cartway and sidewalks. With reference to the list of uses in Ordinance No. 415 for the excess land the chancellor stated: ". . . we conclude that since the word 'only,' or some other restrictive term, was not used in

---

[3] The deed of dedication recites: ". . . we . . . do hereby dedicate forever for public use for highway purposes to the grades designated and shown thereon by said City's Ordinance No. 415 . . . all, the streets, avenues, lanes, ways and other public highways shown on said plan with the same force and effect as if the same had been opened through legal proceedings: . . ."

the ordinance, it was not meant to so restrict the City in using this strip of ground. It must be remembered that these uses were supplied by the City, and not by the dedicators." The accepting Ordinance No. 435 made a blanket acceptance of the unlimited dedication proposed by the Clemsons and included the 10-foot strip here in dispute without restriction as to its public use.

Moreover, the fact that the enumerated uses appearing in Ordinance No. 415 did not include driveways and sewers does not, in itself, indicate that such uses were excluded. The doctrine that the inclusion of certain items infers the exclusion of others is merely an aid to construction; it is not of universal application and may not be applied where an examination of the entire transaction indicates a more inclusive intention. *Fazio v. Pittsburgh Railways Company*, 321 Pa. 7, 11, 12, 182 A. 696; *Fazio Unemployment Compensation Case*, 164 Pa. Superior Ct. 9, 11, 12, 63 A. 2d 489. The factual issue of the intended extent of the dedication was a matter to be resolved by the chancellor on the basis of the acts of the parties in connection with the deed of dedication. *Borough of Mountville v. Gable*, 73 Pa. Superior Ct. 189, 190. The chancellor concluded that the entire 42 feet were dedicated to, and accepted by, the City for road purposes without restriction. This conclusion will not be disturbed.

Appellants contend, however, that the Evansons have no right of access onto and over the 10-foot strip to Highmont Road because neither the Evansons nor their predecessors in title had any prior interest in the tract of land dedicated as Highmont Road. It is argued that, although the land was dedicated for highway purposes, the dedicators and their successors in title retained all rights of ownership not surrendered to the public. This of course is the general rule. See *Breinig v. Allegheny County*, 332 Pa. 474, 477, 2 A. 2d

842. Admittedly, the property of the Evansons merely abuts land which became the highway; the Evansons do not derive their title from the Clemsons, the dedicators. But it does not follow, as appellants argue, that an owner abutting on a public road has no right of access thereto unless he derives his title through the dedicator or his successors in title. "The right of a property owner to have (or build) a road over his own land to connect with a public road has been recognized for centuries as one of his fundamental inalienable rights." *Rolling Green Golf Club Case,* 374 Pa. 450, 456, 97 A. 2d 523, 526. It is generally recognized that the right of access to a public highway is an incident of the ownership or occupancy of land abutting thereon, and it is a right which exists regardless of whether or not the fee title to the public right of way is in the abutting property owner. See 25 Am. Jur., Highways, §154, p. 448. " 'The right of access exists whether the abutting owner owns the soil to the center of the highway or not.' " *Johnson v. Watertown,* 131 Conn. 84, 38 A. 2d 1, 4.[4] The case of *Shore v. Friedman,* 142 Pa. Superior Ct. 373, 379, 16 A. 2d 727, relied upon by appellants is not controlling. In the *Shore* case access to a private road built wholly upon one tract of land was denied to the owners of land abutting on the private driveway. Except possibly for an easement by necessity, the right of access to a *private* driveway wholly upon the land of another must be founded upon some right, interest, or privilege derived from or through the owner of the driveway, his predecessors or successors in title. *Shore v. Friedman,* supra, 142

---

[4] "An abutting owner undoubtedly has the right to place his car in a garage on his own lot and for the purpose of access thereto he may use the sidewalk, cutting the curb under municipal permit, to enable him to make a safe entrance." *Breinig v. Allegheny County,* 332 Pa. 474, 481, 2 A. 2d 842, 847.

Pa. Superior Ct. 373, 380, 16 A. 2d 727. But a private driveway is not the same in this respect as a public highway. An owner of a lot of land abutting a public highway dedicated by the adjoining owner entirely out of his own property nevertheless has the right of access to the public highway. *Donohugh v. Lister*, 205 Pa. 464, 466, 55 A. 23.

It is also apparent that the Evansons had the right as abutting owners to run the sewer or utility connections from their property to the street. See *Carpenter v. City of Lancaster*, 250 Pa. 541, 95 A. 702; *Wood v. McGrath*, 150 Pa. 451, 455, 24 A. 682; *William Laubach & Sons v. Easton*, 347 Pa. 542, 546, 547, 32 A. 2d 881. See, also, Act of June 7, 1901, P. L. 493, §8, as amended, 53 PS §4606.

Appellants also contend that the original right to cross the 10-foot strip was limited to access on foot, and that to permit the laying of a sewer line and the use of a driveway creates an additional burden and changes the location of the original easement. Since the 10-foot strip was found by the chancellor, on the basis of the evidence of dedication, to be a part of the highway, we are not here concerned whether the predecessors in title of appellants had granted any private easement to the predecessors in title of the Evansons. The right of the Evansons evolves from the fact that they are abutting landowners to a public highway. For the same reason we are not concerned with the fact that the Evansons may have a means of access, ingress, and egress to and from their lot over another driveway to Shady Avenue. Their right to this driveway does not arise by reason of necessity but upon other considerations.

The decree is affirmed, at appellants' costs.