Boyd et al., Appellants, *v.* Shell Oil Company.

Argued September 24, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Walter K. Swartzkopf, Jr.,* with him *Rhoads, Sinon & Reader,* for appellants.

*Lee C. Swartz,* with him *H. Joseph Hepford,* and *Hepford, Zimmerman & Swartz,* for appellees.

OPINION BY MR. CHIEF JUSTICE JONES, November 26, 1973:

These appeals concern a lessee's right, or lack thereof, under certain lease provisions to install automatic car washing facilities in its service stations without the prior consent of the lessors. The pertinent facts can be summarized as follows.

In the latter part of 1968, appellee, Shell Oil Company (Shell), leased two sites from appellants for the purpose of erecting and operating service stations thereon. These leases contained certain requirements and restrictions regarding Shell's construction and use of the premises, namely paragraphs nos. 3, 5 and 8, which require submission to and approval by the lessor of plans and specifications prior to any construction, termination of the construction requirements under any extensions of the lease, and written approval by lessor of any "additional or alternative use" of the premises.[1]

---

[1] These paragraphs provide in pertinent part as follows:

"3. *Construction.* Shell, upon execution of this Lease, shall enter upon the demised premises and commence construction of automobile service station improvements and facilities. . . . The

However, paragraph 8 also gives Shell the right, *inter alia*, to make "alterations" to the buildings, improvements, and facilities provided that such alterations do not reduce the value or usefulness of the premises.[2]

In late September 1972, Shell engaged appellee Allstate Construction Company, Inc., to convert the third bay in each service station to permit installation of an automatic car wash facility. This basically involved knocking out the rear walls of these bays, replacing the walls with overhead doors, and installing certain machinery within the bays.

As lessors had not given their approval to this project, they commenced these actions in the Court of

construction of said automobile service station improvements and facilities shall strictly conform to plans and specifications which shall be presented to and approved by Lessor, whose approval shall not be unreasonably withheld, prior to commencement of any construction. . . ."

"5. *Extension Options.* Shell shall have options to extend this Lease for three (3) additional periods of five (5) years each, upon the same covenants and conditions (except for the construction requirements of paragraph 3 hereof) as provided with respect to the original term of this lease. . . ."

"8. *Use of Premises.* Shell shall use and occupy the demised premises as an automobile service station. Shell shall not make any additional or alternative use of the premises, unless prior thereto Lessor consents to such additional or alternative use in writing. Lessor shall not unreasonably withhold such consent. . . ."

[2] The latter part of paragraph 8 provides as follows: "8. *Use of Premises.* . . . Shell shall have the right, at Shell's expense: to enter the demised premises, at any time after the date of this Lease, for the purpose of making investigations and surveys; to construct and install on the premises, and paint in colors of Shell's selection, an automobile service station, and any additional buildings, improvements and facilities (including advertising signs and billboards) that Shell may desire; and to make any alterations that Shell may desire in the buildings, improvements and facilities at any time located on the demised premises; provided that such alterations shall not reduce the value or usefulness of the demised premises."

Common Pleas of Dauphin County, seeking both preliminary and permanent injunctive relief against the installation of the automatic car wash facilities. Following a hearing on October 4, 1972, the chancellor refused appellants' requests for preliminary injunctions. Subsequently, the chancellor filed an opinion dismissing the complaints, appellants filed exceptions which the court overruled, and final decrees were entered in favor of appellees on April 18, 1973. These appeals come directly to this Court from those decrees.[3]

Appellants present three basic arguments in seeking reversal of the court below. Initially, they argue that the chancellor erred in concluding that the requirements of paragraph 3 relate only to the initial construction of the service station. Appellants maintain that the language "prior to commencement of any construction"[4] clearly requires submission to and approval by the lessors of plans and specifications for the lessee's present project. They further argue that the language in paragraph 5 which excludes the requirements of paragraph 3 from any extensions of the lease[5] implies that these requirements remain in full force during the entire initial lease period. We disagree with both contentions.

In construing the terms of a lease, the intent of the parties is not to be determined merely by reference to a single word or phrase but by giving "every part of [the document] its fair and legitimate meaning." *Mattocks & Bemus v. Cullum*, 6 Pa. 454, 456 (1847). It is apparent that appellants have ignored this principle in basing

---

[3] Pursuant to section 202 of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, art. II, §202(4), 17 P.S. §211.202(4) (Supp. 1973), we have exclusive jurisdiction over appeals from final decrees of the courts of common pleas in actions in equity.

[4] *See* note 1 *supra.*

[5] *See* note 1 *supra.*

their argument on a literal and formalistic definition
of "any construction." In arguing that paragraph 3
relates to all renovations or alterations of any degree or
kind, appellants ignore the import of paragraph 8, which
requires the lessors' approval of any "additional or
alternative use" of the premises[6] and which affirma-
tively gives the lessee the *right, inter alia,* to make al-
terations.[7] To adopt appellants' construction of para-
graph 3 would render one part of paragraph 8 meaning-
less while totally contradicting another part. More-
over, the language of paragraph 5 cited by appellants,
if anything, bolsters appellees' position. If the lessors'
right to veto any construction beyond the initial con-
struction is of any significance whatever, we cannot
perceive why they would permit this right to be auto-
matically relinquished upon the lessee's exercise of its
renewal option. Hence, we must agree with the chan-
cellor's determination that the requirements of para-
graph 3 apply to the initial construction phase only.

Appellants' second and major argument is that the
chancellor erred in concluding that lessee's contem-
plated use of the third bays of the station as an auto-
matic car wash was not an "additional or alternative
use" and, hence, that the lessors' approval was not re-
quired under paragraph 8 of the lease.[8] Urging that the
facility in dispute constitutes an additional use, they
rely on the dictionary definition of "additional." How-
ever, as we have stated above, the meaning of a term
in a lease is not to be drawn from an examination of
that term in a vacuum, but by reference to the other
terms and by use of common sense. It is significant
to note that the latter part of paragraph 8 gives Shell
"the right . . . to construct and install on the premises

---

[6] *See* note 1 *supra.*

[7] *See* note 2 *supra.*

[8] *See* note 1 *supra.*

. . . any additional buildings, improvements and facilities (including advertising signs and billboards) that Shell may desire; and to make any alterations . . . in the buildings, improvements and facilities at any time located on the demised premises; provided that such alterations shall not reduce the value or usefulness of the demised premises. . . ." Obviously, if this language is to have any meaning, the "additional use" language cited by appellants cannot be logically construed to preclude all renovations or alterations of the premises. Hence, we read paragraph 8 as permitting uses incidental to the service station operation so long as there is no resulting reduction of value or usefulness of the premises.

The question remains, however, whether the automatic car wash should be considered an incidental or an additional use. Appellants point to an agreement dated August 13, 1972, between Shell and one of its dealers involving the car wash facility which is supplemental to the initial service station dealer lease. They argue that this agreement evidences that "Shell itself recognized that a separate and additional use was entailed in the addition of the automatic car wash." We must reject this argument summarily, however, as we deem this agreement, being between different parties from those involved here and entered into four years subsequent to the lease presently in issue, irrelevant.

In support of their position that the car wash facility is merely incidental to the service station operation, appellees cite *Novello v. Zoning Board of Adjustment*, 384 Pa. 294, 121 A. 2d 91 (1956), and two subsequent cases which follow the *Novello* reasoning.[9] Ap-

---

[9] *See Parisi v. Philadelphia Zoning Board of Adjustment*, 393 Pa. 458, 143 A. 2d 360 (1958) ; *Garner v. Zoning Board of Adjustment*, 388 Pa. 98, 130 A. 2d 148 (1957). Both these cases rely on

pellants contend that *Novello* is inapposite since it concerned interpretation of a zoning ordinance rather than a lease between private parties as we have here. While it is true that *Novello* is not controlling here, the reasoning of that case may still be pertinent in our resolution of the present dispute.

In *Novello,* this Court held that the washing of cars is a use incidental to the operation of gas and oil service stations and thus, the Board of Adjustment was authorized to issue a permit therefor under the zoning ordinance.[10] The appellants in *Novello,* in addition to arguing contrary to the basic thrust of the Court's ultimate holding, also stressed that car washing in garages was normally done by hand while the proposed use entailed the employment of machinery. Rejecting this distinction, Mr. Chief Justice STERN noted that this fact "amounts to nothing more than a difference in the degree of thoroughness with which the cars are washed, not to a difference in use as prescribed in the Ordinance." 384 Pa. at 297, 121 A. 2d at 92.

Similarly, the lessee's installation of automatic car washing facilities in the instant case also appears to constitute merely a difference in degree. The third bay of each station already contains drains and was, in fact, previously used for the washing of cars. Moreover, Mr. Alexander Boyd, one of the lessors, testified

---

*Novello* in permitting car washes under the applicable ordinance. *Novello,* however, is the leading case in this area and hence, our discussion will be confined to that case.

[10] The ordinance in *Novello,* in addition to some twenty-seven permitted uses in an "A Commercial" district, provided for ten other uses which would be permitted only upon the issuance of a certificate from the Board. One of these ten uses was for a "public garage or repair shop, gas and oil service stations . . ." while other classes of uses included "[u]ses customarily accessory and incidental to the permitted uses," and uses "of the same general character" as the other nine. 384 Pa. at 295-96, 121 A. 2d at 92.

that he did anticipate that the stations would offer car washing services. Both parties agree, however, that at the time the leases were negotiated, automatic car washing was not specifically contemplated. Nevertheless, this does not mean that lessee is now precluded from modernizing its facilities. It is apparent from the evidence that the purpose of the conversion from manual to automatic washing is primarily to promote gasoline sales since this new method of sales promotion has proved rather effective where it has been utilized. We are not inclined to inhibit a commercial lessee's utilization of modern techniques absent a clear prohibition in the lease itself. Since the contemplated installation will leave the premises substantially unchanged in both appearance and use and since this project will, if anything, enhance the value of the premises, we cannot find that the lease prohibits the appellees' proposed course of action. On the facts before us, the automatic car wash constitutes an incidental rather than an additional use of the service station premises.

Decrees affirmed. Appellants pay costs.