380 A.2d 815

**CHECKER OIL CO. OF DELAWARE, INC., Appellant,**

**v.**

**HAROLD H. HOGG, INC., and York County Industrial Development Authority, Appellees.**

Superior Court of Pennsylvania.

Argued June 16, 1977.

Decided Dec. 2, 1977.

Richard W. Davis, Lebanon, for appellant.

William H. Neff, Jr., York, for appellee, Harold H. Hogg, Inc.

Donald L. Reihart, District Attorney, York, and George E. Christianson, District Attorney, Lebanon, on brief for appellee, York County Industrial Development Authority.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This appeal arises from the order of the chancellor dated January 4, 1977, dismissing appellant's exceptions to the dismissal of its complaint in equity on June 14, 1976.[1]  Ap-

---

1. On July 9, 1976, appellant filed a notice of appeal to this Court from the order dated June 14, 1976.  Thereafter, on July 12, 1976, appellant filed a petition for rehearing in the lower court to which Appellee Hogg filed an answer on July 28th.  On August 11, 1976, Hogg filed a motion to dissolve the preliminary injunction issued on June 7, 1976.  Thereupon, the lower court issued on August 31, 1976, a memorandum opinion in an attempt to dispel the confusion of both parties;  the chancellor ordered the petition for rehearing dismissed because of the pending appeal and dismissed the motion to dissolve

pellant contends that the chancellor erred in failing to find that Appellee Hogg denied appellant its right to quiet enjoyment of the demised premises. We agree and, therefore, reverse and remand for the entry of a decree granting a mandatory injunction.

Appellant is a Delaware corporation which is the assignee of the interest of Checker Oil Company, an Illinois corporation, in a lease entered into with the Lebanon Valley Management Corporation on March 29, 1974. The lease provided for the rental of the southwest corner of the Lebanon Valley Shopping Center in Palmyra, Pennsylvania, to Checker for use as a service station.[2] On or about December 30, 1975, the Lebanon Valley Management Corporation deeded the premises to the York County Industrial Development Authority, which in turn entered into an installment agreement of sale with Appellee Hogg, assigning to the latter the Authority's interest in the Checker lease.[3] In May, 1976, Hogg, in response to instructions from the Pennsylvania Department of Transportation, began erecting a metal guardrail along the southern edge of the premises, bordering on U.S. Route 422. The purpose of this construction was to

because the original complaint had already been dismissed by his order of June 14, 1976. Appellant then filed a motion with this Court on September 9, 1976, to dismiss the premature appeal. *See* Pa.R. C.P. No. 1518. The motion was granted on September 10th and on September 17th appellant filed exceptions to the adjudication of August 31st and to the preliminary order dated June 14th. Finally, on January 4, 1977, the chancellor filed an opinion and order dismissing appellant's exceptions.

2. The plot is bounded by U.S. Route 422 on the south and by Duke Street on the west. At the time the lease was executed it was improved by a small gasoline station, two service islands with three gasoline pumps on each and by four underground storage tanks. The station was fully accessible to motorists travelling on Route 422 and Duke Street as well as to those traversing the shopping center parking lot from the north and east. The monthly rental for the sixty-month term ending on March 31, 1979, was fixed at $250.00 plus a facilities fee of $5.00. Appellant was given the right to extend the lease for two additional five-year periods at an increased rental.

3. The Authority, which remains the record title holder of the premises, was deleted as a necessary party-defendant by leave of the court at the hearing held on June 11, 1976.

replace a deteriorating rolled asphalt curb which had previously served to limit access to the service station from the highway; one forty or fifty foot opening had been left in the curb at the eastern end of the one-hundred and fifty foot frontage. Although the construction permit obtained by Appellee Hogg from the Department of Transportation provided for an opening in the guardrail similar to that which had previously existed, Hogg constructed a continuous barrier along the entire frontage which blocked, and continues to block, all direct access to appellant's gasoline station from Route 422.[4]

On June 4, 1976, while the construction was in progress, appellant brought a complaint in equity requesting both prohibitive and mandatory injunctive relief requiring the cessation of the guardrail erection and the removal of that portion blocking the previous opening. A preliminary injunction was granted on June 7th and a hearing held on June 11, 1976. The chancellor applied the maxim *expressio unius est exclusio alterius*, and held that specific provisions in the lease guaranteeing continued access from Duke Street[5] precluded by implication any such guarantee with respect to Route 422. He therefore dissolved the preliminary injunction and dismissed the complaint in an order dated June 14, 1976.

It has long been the general rule that those rights essential to the enjoyment of the demised premises pass to the tenant as part of the leasehold. For example, rights of ingress and egress will pass even though not specifically mentioned in the lease. *Weigand v. American Stores Co.*,

4. The guardrail continued around the corner and along Duke Street, which borders appellant's premises on the west. Appellee left two thirty-five foot access openings on the Duke Street side, one directly west of appellant's station and the other somewhat to the north of it.

5. Paragraph 17 of the lease states: "[The] openings immediately west of the leased premises shall remain in existence during the term of this Lease and any renewal thereof . . .." The only direct reference made to access from Route 422 is found in paragraph 13, which provides that, "In the event Route 422 should be closed to traffic thereby preventing ingress and egress to and from said highway and the leased premises, the rent herein shall abate . . .."

346 Pa. 253, 257, 29 A.2d 484, 486 (1943). Of course the parties to the agreement are free to modify or restrict those rights as they see fit.[6] Appellee contends that, as the chancellor found, the provision in the lease calling for guaranteed access to appellant's gasoline station from Duke Street precludes any similar right of access from U.S. Route 422.

In applying the maxim *expressio unius est exclusio alterius*, the chancellor ignored several established rules of property law, however. The maxim merely expresses a rule of construction to be employed in determining the intent of the parties to an agreement when it cannot otherwise be discerned; it is not a rule of substantive law. *See McCargo v. Evanson*, 188 Pa.Super. 465, 471, 149 A.2d 588, 591 (1959). Like any rule of construction, it is not to be invoked arbitrarily to bar reasonable inferences to the contrary. *McAllister v. Century Indemnity Co. of Hartford, Connecticut*, 24 N.J.Super. 289, 94 A.2d 345, *aff'd* 12 N.J. 395, 97 A.2d 160 (1953). Nor may it be applied when an examination of the entire transaction reveals that the parties had a different or more inclusive intention or where the parties had a special reason for providing for one contingency, but not for another. *McCargo v. Evanson*, supra, 188 Pa.Super. at 471, 149 A.2d at 591, *citing Fazio v. Pittsburgh Railways Co.*, 321 Pa. 7, 182 A. 696 (1936). In construing the terms of the lease, the intent of the parties is not to be determined merely by reference to a single word or phrase, but by giving "every part of [the document] its fair and legitimate meaning." *Boyd v. Shell Oil Co.*, 454 Pa. 374, 377, 311 A.2d 616, 618–19 (1973), *quoting Mattocks & Bemus v. Cullum*, 6 Pa. 454, 456 (1847). It is thus necessary to examine the circumstances surrounding the execution of the lease in order to determine what rights of ingress and egress the lessor and lessee intended should pass as appurtenant to the conveyance.

**6.** The drawing of an inference that a particular right was intended can always be prevented by language in the conveyance which negates such an intention. *Tidewater Oil Co. v. Camden Securities Co.*, 49 N.J.Super. 155, 162, 139 A.2d 318, 323 (1958).

*Lipsie v. Dickey*, 375 Pa. 230, 100 A.2d 370 (1953); *Connery v. Brooke*, 73 Pa. 80 (1873).

At the time the lease was executed, access from Duke Street could be had along the entire western boundary of the demised premises. Access from U.S. Route 422 was limited, however, to one 40-foot opening in the rolled asphalt curb running the length of the 150-foot southern boundary. Paragraph 17 of the lease [7] was obviously inserted to guarantee continued access from Duke Street in the event that a governmental agency required the erection of a traffic control barrier along the western boundary. No similar reason existed for specifying that access from Route 422 was to be maintained. A rolled asphalt curb had already been constructed which permitted both east and west bound traffic to enter appellant's gasoline station from Route 422.

It is clear, moreover, that access to and from the main highway was an important consideration in Checker's decision to lease the premises. Paragraph 13 of the lease provides: "In the event Route 422 should be closed to traffic thereby preventing ingress and egress to and from said highway and the leased premises, the rent herein shall abate . . . ." [8] Furthermore, it is a reasonable inference that, since the use of the premises was limited to the retail sale of gasoline,[9] appellant depended upon an influx of customers from the main highway adjoining its premises.[10] It flies in the face of reason to conclude that, by guaranteeing continued access from Duke Street, the parties to the lease meant

7. *See* note 5, supra.

8. While Route 422 has not been closed, this is not an action for abatement of rent. Paragraph 13 is highly probative of the intent of the parties with respect to the importance of direct ingress and egress from the highway.

9. Paragraph 3. c. of the lease prohibits the greasing, washing or repairing of automobiles on the premises and limits their use to the sale of gasoline, oil and directly related items.

10. The intention of the parties may be shown by evidence of the condition of the premises when they were leased and the use to which they were put. 2 Thompson on Real Property § 1052, p. 197 (1961).

to preclude any guarantee of access via the long-established opening from Route 422.

An express covenant for quiet enjoyment is set forth in paragraph 19 of the lease.[11] The legal implication of the covenant, express or implied, is that the lessor will permit the tenant to enjoy fully the demised premises subject to any rights reserved to the lessor. 2 Thompson on Real Property § 1129, p. 471 (1961), *citing Kelly v. Miller*, 249 Pa. 314, 94 A. 1055 (1915). The burden of the covenant runs with the land and thus passes to the transferee of the reversion or to the assignee of the landlord's interest in the lease. *Cf., Raker v. G. C. Murphy Co.*, 358 Pa. 339, 58 A.2d 18 (1948). Appellee Hogg is bound by the covenant as fully as if it were the original lessor. It is, therefore, incumbent upon us to determine whether appellee's actions constituted a breach of the express covenant for quiet enjoyment.

"The covenant . . . is breached when a tenant's possession is impaired by acts of the lessor or those acting under him . . . ." *Pollock v. Morelli*, 245 Pa.Super. 388, 392, 369 A.2d 458, 460 (1976), *allocatur denied*, June 17, 1977, *citing No. 14 Coal Co. v. Pennsylvania Coal Co.*, 416 Pa. 218, 206 A.2d 57 (1965); *Einfield v. Shermer*, 56 Pa.Super. 4 (1914). *See also Oakford v. Nixon*, 177 Pa. 76, 35 A. 588 (1896). The impairment of the lessee's possession need not be total, but the utility of the premises must be substantially decreased by the landlord's interference with a right or privilege which is necessary to the enjoyment of the premises. *See Kelly v. Miller*, supra; *Pollock v. Morelli*, supra.

Recovery for breach of the covenant for quiet enjoyment has been allowed in Pennsylvania when the lessor has substantially altered previously existing means of access, thereby rendering the property unsuitable for the purpose for which it was leased. In *Kelly v. Miller*, supra, for

11. "It is further understood and agreed that subject to the terms of this Lease, Tenant . . . may peacefully hold and enjoy the leased premises throughout the duration of this Lease without any interruptions by the Landlord, its successors or assigns or any persons lawfully claiming through the Landlord."

example, the tenant leased a theater which was connected to the tenant's adjoining premises by several doorways. These openings were used to transfer property and supplies from one building to the other. Our Supreme Court held that the closing of these openings by the landlord constituted a breach of the covenant for quiet enjoyment even though other means of access were available.[12] The Court stated that, "[The doors] were part of the demised premises at the date of the lease, and any change in them to the detriment of the tenant was a violation of the tenant's implied covenant for the quiet enjoyment of the property." *Kelly v. Miller*, supra, 249 Pa. at 317, 94 A. at 1056.

Likewise, in *Pollock v. Morelli*, supra, we found that the covenant had been breached by the landlord's erection of a "mini mall" in front of the tenant's store. Access to the previously visible store could still be gained by entering the mall, but we held that the lessor's construction substantially interfered with the lessee's anticipated use of the premises and deprived him of its "attractive features." *Pollock v. Morelli*, supra, 245 Pa.Super. at 393, 369 A.2d at 461.[13]

■ In the instant case, the right of access from Route 422 via the opening in the asphalt curb was present at the time the lease was executed and was as much a part of the leasehold as the building and gasoline pumps. The lessee bargained for, and the lessor agreed to furnish, premises

**12.** The chancellor stated that the instant case is distinguishable from *Kelly* in that motorists travelling on Route 422 can still obtain access to appellee's premises by turning off the main highway onto Duke Street or by approaching the gasoline station from the north and east via the shopping plaza parking lot. His basis for distinguishing Kelly is erroneous, however. In *Kelly* the tenant could still have transported its supplies from one building to the other by using the outside doors of the two buildings.

**13.** Many other jurisdictions recognize a tenant's right to beneficial enjoyment of the demised premises and hold that a breach of the covenant for quiet enjoyment is clearly established when the lessor denies the lessee the right to use an important part of the premises, blocks access to the premises or otherwise substantially interferes with the intended use of the property leased. *See* cases cited in *Pollock v. Morelli*, 245 Pa.Super. 388, 393–96 and n. 2, 369 A.2d 458, 461–62 and n. 2 (1976).

suitable for use as a gasoline station with ingress and egress from all four sides, including the opening from Route 422. Access from the main highway adjoining the premises is necessary to appellant's enjoyment of the leasehold in the manner intended.[14] The fact that *indirect* access from Route 422 can still be had by first turning onto a side street does not make *direct* access from Route 422 a mere convenience as appellee would have us believe. The alteration of the premises has deprived appellant of a valuable feature of the plot and has substantially reduced its utility to appellant. Appellee has, therefore, breached the express covenant for quiet enjoyment set forth in the lease.

Appellant seeks the equitable remedy of a mandatory injunction to restore it to the *status quo ante*.[15] This remedy may be employed only when the party seeking it has a clear right to relief, the need for the relief is immediate, and irreparable injury will result if it is not granted. *Roberts v. Board of Directors of the School District of Scranton*, 462 Pa. 464, 469, 341 A.2d 475, 478 (1975); *Taylor v. Sauer*, 40 Pa.Super. 229, 232 (1909).

Not only is appellant's right to relief clear in this case, but appellee interfered with its tenant's peaceful possession without the slightest legal justification or requirement. Appellee's argument that the law does not require a landowner to maintain access between his property and an adjoining public highway conveniently ignores the fact that, during the term of the lease, the property is not legally his to do with as he pleases. "When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of the premises for the term." *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 470, 329 A.2d 812, 822 (1974),

14. The chancellor recognized this when, in response to an offer of testimony concerning the effect of the guardrail on appellant's business, he stated: "I don't need to be advised by an expert. If you seal off access to the main highway, you're going to have reduced traffic." Printed record at 70a.

15. The *status quo ante* is the last actual, peaceable, uncontested status which preceded the controversy. *Taylor v. Sauer*, 40 Pa.Super. 229, 232 (1909).

*quoting* W. Prosser, Handbook of the Law of Torts § 63, at 399 (4th ed. 1971). The converse of this argument is more to the point: the law did not require appellee to erect a barrier eliminating all direct access from Route 422 to appellant's premises.[16]

The need for a mandatory injunction is immediate and the injury to appellant irreparable. The difficulty of establishing the amount of pecuniary loss and the continuing nature of the wrong make the legal remedy of damages inadequate. Appellant is entitled to be restored to the peaceful enjoyment of the premises which it experienced prior to the onset of the present controversy.

We, therefore, reverse the decree and remand for the entry of a mandatory injunction in favor of appellant.

**16.** The testimony of the Pennsylvania Department of Transportation's permit inspector for Lebanon County makes it clear that appellee was required only to erect a guardrail *redefining existing driveways* to and from the shopping center. *See* Record at 34a–45a.